**The People of the State of Illinois, Defendant in Error, v. Isiah Washington, Plaintiff in Error.**

**Gen. No. 64-44.**

Second District.
December 28, 1964.
Rehearing denied February 8, 1965.

Wesley E. Lindberg, of Rockford, for appellant.

William R. Nash, State's Attorney, of Rockford (William H. Snively, Assistant State's Attorney, of counsel), for appellee.

CARROLL, J.

Defendant, Isiah Washington, was indicted in the Circuit Court of Winnebago County for the murder of Otis Conners. The indictment also contained a count for manslaughter. He was tried by a jury and found guilty of voluntary manslaughter. A motion for a new trial was overruled, and the court sentenced the defendant to the penitentiary for a term of not less than one nor more than fourteen years. Defendant sued out a writ of error from the Supreme Court, and the cause is before us pursuant to a transfer order of that court.

The principal question presented on this review is whether or not the evidence established the guilt of the defendant on the charge of manslaughter beyond a reasonable doubt.

The record discloses that during the early morning hours of November 19, 1961, the defendant was in the home of Gladys Robinson participating in a card

game known as "Georgia Skin." One of the players was Otis Conners, the deceased. Among others present were Willie Mae Conners, deceased's wife, Cornelia Givham, and Gladys Robinson. Defendant was armed with a loaded 38 caliber revolver which was in a holster under his coat. During the game there was an argument between the defendant and Gladys Robinson. There was also a heated exchange of words between the deceased and the defendant, which apparently was occasioned by one of deceased's remarks to Gladys. Deceased slapped the defendant in the mouth and head with his hand. Thereupon the defendant took his revolver from his holster and fired. He and the deceased then struggled about the room during which time the defendant fired a total of five shots. Two of these struck the deceased in the chest and another entered his left hand. One of the wounds was fatal.

There appears to be little, if any, conflict in the testimony of the witnesses as to what occurred just prior to the shooting. Gladys Robinson and Cornelia Givham both testified that when Conners slapped the defendant they were seated on opposite sides of the card table; that the defendant got up, drew his gun and started shooting; that he and Conners struggled about the room; that defendant had the gun in his right hand; that after firing four or five shots, defendant struck Conners across the head with the barrel of the gun; that Conners slapped the defendant with his bare hand and that the only weapon they saw was the defendant's gun; and that when defendant left the Robinson home he was carrying the gun in his hand.

The defendant testified that while he was shuffling the cards, Conners slapped him on the left side of his head with his hand; that defendant fired two

shots into the ceiling; that he and Conners then tussled; that they both had their hands on the gun; that four shots were fired; that when he "got the gun loose" he hit Conners in the head with it; that he did not try to shoot him; that although he saw Conners fall to the floor, he didn't know he was shot. He further testified that he did not become angry in the tussle and fired the gun because he did not want Conners to hurt him; and that on previous occasions he had seen Conners carrying a gun. However defendant did not state that Conners was carrying a gun at the time he was killed.

Defendant contends that there was not sufficient evidence to establish his guilt beyond a reasonable doubt, and conversely that it clearly proves he acted in self-defense.

The law with respect to the circumstances under which a person may intentionally kill in self defense and not be guilty of a crime is well settled. Where one who is deliberately assaulted in a manner which reasonably makes him apprehensive of death or great bodily harm, he has the right to kill his assailant if it reasonably appears to him that such action is necessary to save himself from death or great bodily harm. People v. Motuzas, 352 Ill 340, 185 NE 614. People v. Dillon, 24 Ill2d 122, 180 NE2d 503. People v. Strader, 23 Ill2d 13, 177 NE2d 126. Whether a killing is justified under the law of self defense is always a question of fact to be determined by the jury under proper instructions. Where such question has been decided by a jury this court will not disturb its findings unless the verdict is palpably contrary to the evidence or so unreasonable, improbable or unsatisfactory that there is justification for entertaining a reasonable doubt as to the defendant's guilt. People v. Jordan, 18 Ill2d 489, 165 NE2d 296.

■ Here there is no contention that the jury was not properly instructed as to the law applicable to the case. Accordingly we are confronted only with the question whether from the evidence adduced on the trial a reasonable doubt could be entertained as to defendant's guilt. It is undisputed that defendant shot and killed the deceased; and that when the defendant came to the Robinson house he was armed with a loaded revolver. There is no evidence that the defendant at that time knew he was going to play cards with the deceased. If defendant was carrying the gun in anticipation of an encounter with the deceased, the evidence fails to show it. The witnesses agree that following an exchange of words between defendant and the deceased, the latter slapped the defendant with his bare hand. No witness states that the deceased displayed or used any weapon. Defendant, while testifying that the slap "dizzied" him does not characterize it as being a severe blow or that as a result thereof he suffered any serious bodily injury. There is no evidence that the deceased continued his assault upon the defendant. According to defendant's own testimony, after he fired two shots, he and the deceased grappled for the gun; and that in defendant's words "We was tussling and he was pushing me like he was trying to take the gun away from me." To us this evidence would seem to tend to show that it was the deceased and not the defendant who was in fear of his life and was doing what he could to protect himself. We think the evidence when subjected to a fair appraisal fails to sustain defendant's argument that when he shot the deceased he was reasonably apprehensive of death or great bodily injury. To the contrary, the facts show only that the defendant used a gun when he was in no apparent danger other than that which was represented by the bare open hand of

the deceased. In such a factual situation, the only conclusion warranted is that the defendant's act in shooting the deceased was the result of a sudden impulse of passion which precluded deliberation. Defendant relies heavily upon People v. Smith, 404 Ill 350, 88 NE2d 834. In that case the deceased first accosted the defendant in a tavern. Later the deceased pursued the defendant over some fifteen miles of highway, during which time the deceased attempted to stop the defendant's car by blocking the highway. When defendant stopped at his sister's home, the deceased again attacked him. In a struggle which ensued, defendant struck the deceased with a metal crank inflicting a wound which caused the death of the deceased. In reversing defendant's conviction of manslaughter, the court held that the record disclosed no evidence that the fatal blow was struck as the result of irresistible passion precluding deliberation, but was a deliberate undertaking of defendant in self defense. The court pointed out that the defendant had been subjected to a continuous assault beginning in the tavern and ending only after an interval during which the deceased pursued defendant for over fifteen miles. We think the distinction between the facts in Smith and those in the case at bar is obvious. Here the defendant, upon being slapped almost instantly produced a gun and shot the deceased. No interval sufficient for the voice of reason to assert itself intervened. Here there was evidence upon which the jury could reach a verdict finding defendant guilty of manslaughter. Defendant also has cited People v. Givens, 26 Ill2d 371, 186 NE2d 225. There the deceased without provocation followed the defendant to his room in a boarding house. Defendant did not know the deceased, and never had talked to him prior to that time. The deceased stood in the doorway of defendant's room to prevent the latter from entering. The defendant told

the deceased, whom he feared, to get out and when the latter refused to do so and kept coming forward, the defendant fired one shot which killed the deceased. The Supreme Court held that upon the evidence defendant's conviction of murder must be reversed. In its opinion the court points out that in his own habitation a man may use all the force necessary to repel an invasion of his home; and that "one may resist with force an unlawful entry by one whose purpose is to assault or do violence to him to the extent of taking the aggressor's life even though the circumstances may not be such as to justify a belief that there was actual peril of life or great bodily harm." The court expressed the view that the defendant's action in repelling the invasion of his room by the deceased, who was an unknown intruder, was prompted by fear of an assault entailing grave physical peril. In contrast to the factual situation in Givens, in the case at bar the defendant was not repelling an invasion of his home, was a guest of Gladys Robinson and was acquainted with the deceased. There is no evidence in this record indicating that prior to the time when deceased slapped the defendant the deceased had by word or action indicated any intention of putting the defendant in danger of suffering serious bodily injury. Here the evidence clearly shows that the fatal shot was fired during an altercation of fight between the deceased and the defendant and that the defendant's action was not taken in necessary self defense. We are convinced that this record does not support defendant's claim that the killing was necessary in self defense.

Despite our conclusion that the evidence warranted the verdict reached by the jury there remains for consideration defendant's contention that the record shows the occurrence of prejudicial errors which de prived him of a fair trial. Most serious of such errors

is that relating to the ruling of the trial court which permitted the State to introduce evidence concerning the family left by the deceased, and the comments upon the same made in final argument.

In his opening statement the State's Attorney informed the jury that he believed the evidence would show that the deceased was married and had four children. Defense counsel's objection to such statement was overruled. During the trial, Willie Mae Conner, wife of the deceased was asked this question: "Did you and Mr. Conner have children?" to which she answered, "Yes, we had four." Defense counsel objected to this testimony stating that it was inadmissible and that its introduction was error; but his objection was overruled. The witness was then again asked how many children she had and she answered "four." A further objection to that testimony was also overruled. The record further discloses that during the final arguments to the jury, the State, over defendant's objection was permitted to again remind the jury that the deceased was married for ten years and had four children.

■ The defendant was on trial for murder and our Supreme Court in many such cases has held it error to permit the introduction of evidence that the deceased left a wife and children. People v. Dukes, 12 Ill2d 334, 146 NE2d 14. People v. McMahon, 244 Ill 45, 91 NE 104. Filippo v. People, 224 Ill 212, 79 NE 609. In the Dukes case we find the court cogently stating the rule barring admission of evidence of the condition of the victim's family in this language:

"This court, in murder cases, has frequently condemned the admission of evidence that deceased left a spouse and a family. (People v. Jackymiak, 381 Ill 528; People v. Gormach, 302

474

Ill 332; People v. McMahon, 244 Ill 45; Filippo v. People, 224 Ill 212.) Such evidence has no relation to the guilt or innocence of the accused or the punishment to be administered to him, and is ordinarily calculated only to prejudice the defendant with the jury. Where it is not elicited incidentally, but is presented in such manner as to cause the jury to understand that it is a matter material and proper to be proved, its admission is prejudicial error. (Filippo v. People, 224 Ill 212) Counsel for the People argue that this testimony was brought to the notice of the jury only incidentally. We cannot agree. It appears that the prosecutor regarded the questioned evidence as material and proper in that he urged the death penalty for the defendant in his closing argument to the jury 'because of the family he has destroyed.' We must assume that the jury considered it as material, since the court overruled objections to both the evidence and the argument. Its only purpose was to prejudice the defendant in the eyes of the jury and to arouse in them anger, hate and passion. We cannot speculate as to the extent to which the jury was influenced by this incompetent evidence and inflammatory argument."

In the instant case we are unable to agree with the State's argument that the injection of evidence as to the deceased's family was incidental or that it was justified because the character of the deceased was made an issue in the case. Here it is apparent that the State's Attorney considered such evidence as being material. If such were not the case he would not have made specific reference to it in his opening statement, nor would he in the face of defense objection have persisted in asking the widow to tell the jury

■■■■■■■■

that the deceased left four children. In overruling objections to both the evidence and argument the trial court indicated that the evidence in question was material, and it is difficult to believe that the jury would not so regard it. The jury were called upon to decide whether or not the defendant was guilty of murder. It should have been permitted to make its determination upon the facts material to such issue. Evidence which served no purpose except to prejudice the defendant in the eyes of the jury should have been rejected. Failure of the trial court to observe such rule deprived the defendant of a fair trial to which he is entitled.

For the reasons given, the judgment of the Circuit Court of Winnebago County is reversed and the cause remanded for a new trial.

Reversed and remanded.

ABRAHAMSON, P. J. and MORAN, J., concur.