The People of the State of Illinois, Plaintiff-Appellee, *v.* Eugene Petty, Defendant-Appellant.

(No. 11562;

Fourth District—April 12, 1973.

John F. McNichols, of Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Robert James Steigmann, Assistant State's Attorney, and Peter H. Strow, Senior Law Student, of counsel,) for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Defendant was convicted of forgery. The nature of his appeal does not mandate a recital of the evidence, hence we forbear doing so. He argues for reversal and a new trial, four points, which we take up seriatim.

Defendant's wife was tried with him and likewise found guilty. During the course of the trial, a drivers license application signed with the same name—"James Hinkley"—as on the check which was the subject matter of the forgery and such was offered in evidence by the State. The application was among the effects of his wife taken from her at the time she was placed in the county jail. An "inventory search" that followed produced this document. The victim of the forgery had testified that a person representing himself to be James Hinkley had given him a check so signed as consideration for an automobile sold by him. The victim and his wife positively identified defendant and his wife as the persons with whom they negotiated and from whom they received the check. There was no identification of the signature "James Hinkley" on the application, and important here, the application was offered into evidence only as against the wife.

Defendant argues that this exhibit was obtained in an unlawful search and seizure from the belongings of his wife, and because of the lack of identification as to who—at least between him and his wife—had signed

such application, it was immaterial and irrelevant as to his wife and prejudicial as to him.

■■ Its irrelevancy is hard to see as against the wife. It was in her pocketbook at the time she was booked into the jail, it contained on the signature line the same name as that used on the forged check and she had been identified as one of the persons from whom the check had been obtained at the time the victims sold the automobile. True, it is not relevant as against the husband—but it wasn't offered into evidence against him. The material issue was whether the wife had anything to do with the forged check. An application for a drivers license signed with the same name as that on the check looks to that proposition, that is, it has a tendency to prove a proposition that was material. Relevancy has been defined as a tendency to render a proposition in issue—something material—more or less probable in the light of logic, experience, and accepted assumptions concerning human behavior. The signed application here has that tendency and in our opinion, therefore, is relevant. Whether such was obtained in an unlawful search and seizure is not something the husband can question. In short, he lacks standing. We reiterate the fact that it was offered and limited as evidence only against his wife, and the court admonished the jury to disregard such exhibit as to the husband. The constitutional right asserted by defendant to have been violated was against his wife and not against him, and such right is personal—that is, she is the only one that can complain. The pertinent section of the Illinois Code of Criminal Procedure so provides—"A defendant aggrieved by an unlawful search and seizure may move the court for the return of the property and to suppress as evidence anything so obtained * * *". (Ill. Rev. Stat. 1971, ch. 38, par. 114—12.) Simply put, the husband here was not "a defendant aggrieved by an unlawful search and seizure". The husband made no claim of ownership or of a proprietary interest in the exhibit. As was stated in *People v. Kelley*, 23 Ill.2d 193, 177 N.E.2d 830:

> "* * * We have held in numerous cases that where a defendant neither claims ownership or demands the return of the property alleged to have been illegally seized, he can not complain of the seizure or the introduction of the property in evidence against him. [Citing cases.] Under the doctrine of these cases it is clear that the defendants lacked standing to raise the question of an alleged illegal search * * *."

We conclude that defendant does not have standing to raise this question.

■■ However, the lack of standing and a determination of relevancy as to defendant's wife does not answer precisely the question of its preju-

dicial effect upon him. As we have noted, the exhibit was offered against the wife only, and the court stated that it "is admitted solely as to the defendant Yvonne Petty and should be disregarded as to the defendant Eugene Petty". Defendant argues that it was impossible for the jury to follow this limiting instruction and that where evidence is such that a jury cannot properly limit its consideration to specific items of evidence, then such item should not be admitted even with a limited instruction. In a given context, this might be true—but not here. We agree that some items of evidence cannot be disregarded even though the jury is so advised—and indeed, the very act of limiting the evidence can have the effect of accentuating its importance in the eyes of the jury. We are reminded here of the Mark Twain story of the boy being told to stand in a corner and not think of a white rabbit. But in our context, the exhibit itself was not inflammatory, it did not implicate the defendant as such—it was found in his wife's purse, not in his effects—and if we couple these facts with the court's admonition, we do not have, in our opinion, a "white rabbit" situation.

■■ On cross-examination one of the State's witnesses was asked whether he could state that defendant was in jail on a given date with the response, "No. They have been there so often I wouldn't know". The answer was disclaimed and a motion for mistrial denied. This is assigned as error. As with the exhibit, the court admonished the jury— "The jury should disregard the last answer". Ordinarily a party cannot complain of evidence which he himself has introduced or brought out— we say ordinarily because if what was elicited, say, on cross-examination, was so prejudicial that it could not be limited, then, of course, a mistrial might be in order. This apparently was the situation in *People v. Williams*, 72 Ill.App.2d 96, 218 N.E.2d 771. In that case a police officer testified on cross-examination that he had obtained a description of the burglar from a report on another church burglary where the victim had been attacked by defendant. But this is far different from the situation here. In our opinion, even disregarding the court's admonition and the fact that defendant elicited it on cross-examination, we do not deem the answer so prejudicial as to require a new trial. And the fact that the jury was so admonished, and further, that it was elicited by defendant himself, removes the answer from the category of reversible error. As was said in *People v. Burage*, 23 Ill.2d 280, 178 N.E.2d 389:

> "While it may be agreed that the reference to defendant's prior incarceration in the penitentiary was completely incompetent and irrelevant, the State is not responsible for questions asked by the attorney for the accused, and neither is it responsible for the answers to such questions by the State's witnesses. [Citing cases.]

If a defendant procures, invites or acquiesces in the admission of evidence, even though it be improper, he cannot complain. * * *."

The answer complained of does not constitute reversible error.

■■ During opening statement, the assistant State's attorney advised the jury that, "I represent you and all other people in Champaign County, Illinois". Such was not immediately objected to, but only mediately—at the close of the statement. The court, in chambers, sustained an objection to the remark, but denied a motion for a mistrial. Defendant argues that the assistant State's attorney misled the jury as to its role and that after being told this, they would naturally believe that the evidence presented by the State was really their evidence, in other words, the jury was on the side of the State and the defendant was on the other. We do not read such remark as carrying these implications. In our opinion, it would be far-fetched for a jury to infer from this remark that somehow it was them and the State against the defendant. While inapt, the remark without more could not possibly have diverted the jury from their role.

■■ Finally, defendant assigns as error the denial of his motion for a pre-trial lineup. The short answer to this point is that we know of no requirement that a lineup should be provided at his request. In-court identifications without more have always been allowed. We consider the question as having been answered in *People ex rel. Blassick v. Callahan*, 50 Ill.2d 330, 279 N.E.2d 1, where it was specifically held that an in-court identification of an accused without a lineup does not deny due process of law, citing *People v. Finch*, 47 Ill.2d 425, 266 N.E.2d 97. Defendant argues that the denial was in effect withholding evidence favorable to him, citing *Brady v. Maryland*, 373 U.S. 83, and *People v. Moses*, 11 Ill.2d 84, 142 N.E.2d 1. But this argument subsumes that the State possessed evidence that the victims were less than sure of their identification of defendant or that such was otherwise suspect. But no facts are produced to buttress this subsumption and we glean none from our examination of the record.

Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

SIMKINS and TRAPP, JJ., concur.