THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNALL CURRY, Defendant-Appellant.

(Nos. 58041, 58592 cons.;

First District (4th Division)—January 22, 1975.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Dorothy B. Johnson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Bernall Curry, was charged in a two-count indictment with aggravated battery causing great bodily harm and with aggravated battery using a deadly weapon. He was found guilty by a jury of aggravated battery and received a sentence of 2 to 5 years in the Illinois State Penitentiary. From the judgment of conviction, the defendant appeals.

The defendant contends before this court that numerous errors occurred during trial which require that his conviction be reversed. We have concluded from an examination of the record that the defendant was indeed deprived of a fair trial because of prejudicial error, and we therefore remand the case for a new trial.

In view of our ultimate determination it is unnecessary either to note all of the defendant's contentions on appeal or to detail the evidence. We need only indicate briefly that testimony revealed that the circumstances of the crime arose as a result of an argument between members of two street gangs known as the "War Lords" and the "Black P. Stone Nation," sometimes referred to as the "Blackstone Rangers." On November 16, 1970, Derrick Thornton, a member of the War Lords, was shot in the back. He never saw who shot him. According to the prosecution he was shot by the defendant, who had been a member of the Black P. Stone Nation. The defendant took the stand at trial and denied that he shot Thornton and testified that he was two blocks away at the time of the incident.

One of the witnesses called by the State was Officer Daniel Davis of the Chicago Police Department. He had been on the force for 5 years and was assigned to the Tactical Unit. On direct examination he testified

that he and his partner received a radio communication that a boy had been shot, and they proceeded to the area. They arrested the defendant, Bernall Curry, who fitted a description received from the radio communication, near the scene of the crime. While detained in the squad car, and as a crowd gathered around, Curry was striking his breast with his fist and saying "Stone Thing," which the officer knew as a sign of the "Blackstone Rangers."

While under cross-examination the following colloquy took place:

"MR. GRAY [defense counsel]:

Q: Officer, you mentioned that you recognized the defendant as being a member of a group known as the Rangers?

A: I said that I'd known the defendant.

Q: Did you know him as being a member of the Rangers?

A: I did because we had two rape warrants out for him with a gang-related incident at the time of the shooting.

Q: You still haven't answered my question. Did you know him as being—

MR. CORSENTINO [assistant State's attorney]: Objection.

MR. GRAY: I object to the answer and ask that it be stricken.

My question was—and the reporter can correct me if I'm wrong—did you know the defendant as being a member of the Rangers and his answer about some rape warrants came out. My question was, did you know him as being a member of the Rangers?

THE COURT: Just a moment. Just a moment. I'm sure the jury heard what the officer said before.

Read it back before any mention of anything else.

(Record read by the reporter as follows:

'Q: Did you know him as being a member of the Rangers?

A: I did  *  *  *')

MR. GRAY: The rest is not responsive to the question.

THE COURT: I disagree with you. He said how he knew him, because of these other things.

MR. GRAY: I didn't ask him how he knew him.

THE COURT: That will stand. He said he knew him, then he gave an explanation, whatever it was. It's up to the jury. All right. He said he did. Go on. Next question."

The defendant contends that the unsolicited and unresponsive statement by a police officer that there were outstanding rape warrants against him, which were unrelated to the charge for which he was being tried, effectively deprived him of a fair trial. For the reasons below, we are compelled to agree.

■■ It is fundamental that, as a general rule and subject to exceptions not applicable here, evidence which tends to show that an accused has committed crimes or acts of misconduct which are distinct and entirely unrelated to the one for which he is being tried is both incompetent and prejudicial. (*People v. Donaldson*, 8 Ill.2d 510, 134 N.E.2d 776.) We believe that the testimony in the instant case, which was volunteered by an experienced police officer, clearly indicated to the jurors that the defendant was wanted for the heinous crime of rape, and unfairly burdened the defendant with the risk that he would be viewed as a person with other criminal tendencies and that this would affect the jurors' decision regarding his guilt or innocence of the contested charge before them. *Cf. People v. Burson*, 11 Ill.2d 360, 143 N.E.2d 239, where the Illinois Supreme Court held, *inter alia*, that mere pictures of the deceased in the nude, lying on a bloody and disheveled bed, were suggestive of rape and therefore prejudicial, and should not have been admitted in evidence in a murder prosecution; *cf.* also *People v. Harges*, 87 Ill.App.2d 376, 231 N.E.2d 650.

■■ The error was compounded when the court denied a motion to strike the reference to other unrelated crimes. In certain cases, an admonition by the trial court judge to the jury to disregard a reference to other crimes, after sustaining an objection to such testimony, has been a factor in holding any such error insufficient to warrant reversal. (*See People v. Johnson*, 11 Ill.App.3d 745, 297 N.E.2d 683.) Here the comments of the trial judge, in our opinion, indicated that the evidence in question was material and that the jury could and should consider it. It is difficult to believe the jury would not do so. See *People v. Washington*, 54 Ill.App.2d 467, 204 N.E.2d 25.

The State focuses on the fact that the testimony complained of was given during defense counsel's cross-examination and points out that a party cannot ordinarily complain of evidence which he himself has introduced or brought out. (*People v. Petty*, 10 Ill.App.3d 975, 295 N.E.2d 275.) The State does concede, however, that if what was elicited was so prejudicial that it could not be limited then, of course, a mistrial may be in order (see *People v. Williams*, 72 Ill.App.2d 96, 218 N.E.2d 771), but it contends that is not the case here. We respond to this argument in several ways. First, the complained of testimony was not really brought out by defense counsel, but was given by the experienced police officer in an unresponsive answer to a much narrower question. The officer was asked merely, "Did you know [the defendant] as being a member of the Rangers?" and he responded, "I did *because we had two rape warrants out for him with a gang related incident at the time of the shooting.*" (Emphasis added.) The italicized part of that response clearly

went far beyond defense counsel's inquiry and cannot fairly be attributed to him. Furthermore, we are not in a position to determine whether the prejudice in the statement was effectively neutralized by an admonition or instruction to the jury. As we have noted, the effect of the statement was in no way counteracted by the court, but rather was ruled admissible and allowed into the record as material evidence. Finally, the prejudice in connecting the defendant to crimes of rape is prodigious.

In *People v. Williams*, 72 Ill.App.2d 96, 218 N.E.2d 771, the defendant was convicted of burglary and theft. A police detective under cross-examination by defense counsel stated that he originally obtained a description of the burglar from another report. When asked whether he had the latter report in his possession, the detective stated. "'This is on another church burglary, in the same reference where the priest was attacked and accosted by George Williams [the defendant].'" (72 Ill.App.2d 96, 99.) A motion for a mistrial by the defendant was denied, but the court ruled that the detective's reply be stricken from the record. The detective also testified on re-direct examination that he had previously seen the defendant "'in pictures and his record, his police record.'" (72 Ill.App.2d 96, 100.) Another motion for a mistrial was denied. The appellate court concluded that the only effect of these statements was to convey to the jury the impression that the defendant had criminal tendencies and was likely to commit a crime such as that for which he was being tried. The court held as we do here that the statements were without evidentiary value and served only to prejudice the defendant in the eyes of the jury. The State points out that in *Williams*, unlike here, the defendant did not take the stand, and that this apparently added to the prejudice in that case. In view of the nature of the testimony in the instant case and the trial court's attitude toward it, however, we do not view the absence of that factor crucial to our decision. We note, too, that in the instant case the prejudicial testimony was given during the presentation of the evidence by the State, and it painted an unhealthy picture of the defendant in the jury's eyes before he had the opportunity to take the stand in his own defense.

The State likens the instant case to *People v. Cherry*, 130 Ill.App.2d 965, 267 N.E.2d 744, but we find the facts of that case dissimilar. In *Cherry*, the defense attorney inquired of a police officer on cross-examination if he had ever seen the defendant Cherry since the time of the alleged offense, to which the officer replied "'Yes sir, he was brought to the station one other time.'" (130 Ill.App.2d 965, 966.) The defense counsel's objection was overruled and therefore no instruction to disregard the testimony was given to the jury. The court found that any

error resulting was harmless, noting that "we have an isolated instance of a remark by a police officer, which may or may not have been intentionally made with intention to influence the jury." (130 Ill.App.2d 965, 967, 267 N.E.2d 744, 746.) Obviously the prejudice inherent in stating that a defendant has been "brought to the station one other time" is exceedingly less than that in stating he was wanted on two charges of rape. Likewise, in *People v. Nelson*, 12 Ill.App.3d 67, 298 N.E.2d 256, a case decided by this court and also relied on by the State, a police officer, while being questioned on direct examination by the assistant State's attorney, referred to " 'another victim'." Not only did the defense counsel fail to object in any way to the statement, let alone request the court to admonish the jury regarding it, but the mere reference to "another victim," in light of the evidence in that case, was not sufficient error to mandate reversal.

For the above reasons we disagree with the State's position that if any error was committed as a result of the police officer's reference to the two rape warrants, coupled with the trial court's refusal to take corrective action, it should be considered harmless. When the defendant took the stand in his own defense, his credibility had already been damaged immeasurably in the eyes of the jury, and the presumption of innocence accorded him was seriously impaired. There is, at the very least, a reasonable doubt in our minds that the jury was not affected by the remark (*Chapman v. California*, 386 U.S. 18), and a reasonable belief that the verdict of the jury may have resulted from it (*People v. Tranowski*, 20 Ill.2d 11, 169 N.E.2d 347).

Since we are remanding the case for a new trial, we will also briefly consider another of the defendant's allegations of error, concerning the prosecutor's cross-examination of defense witness Russell Spratt and a related comment made by the prosecutor during his final argument to the jury.

Russell Spratt, called as a witness by the defense, testified on direct examination that he was a member of the "Stones." He said that on the date in question he was on the corner of 45th and St. Lawrence (in Chicago) talking to the defendant and some other people when he heard a shot. The shooting, according to other evidence, occurred two blocks away near 45th and Evans. He saw people running after the shot, including members of both the War Lords and the Rangers. The Rangers were "making it toward Cottage," *i.e.*, running to get across Cottage Grove Avenue into their own "territory." Spratt said he also left to get across Cottage Grove and the defendant was behind him.

On cross-examination the prosecutor asked:

"Q. \* \* \* Isn't it a fact, Mr. Witness, that you are in fact

the person that gave the gun to Bernall Curry and after the shooting he gave the gun back to you after he ran a while and then you in turn gave the gun to Connie Smith and then after that the policemen arrested you out of a crowd, isn't that a fact, sir?

A. No.

MR. GRAY [defense counsel]: Objection.

THE COURT: He may answer.

MR. GRAY: Also the State is going to substantiate. Your Honor, we don't need any—

THE COURT: Just a minute.

MR. CORSENTINO [assistant State's attorney]: Q. Who did you give the gun to, Bernice Hamilton?

A. I didn't have no gun.

Q. You didn't have no gun?

A. No."

Developing this same theme in his closing argument to the jury, the prosecutor remarked:

"I guess Mr. Spratt—the gun man; now he is the one that gave the gun to the defendant. He is the one that took it after the shooting and he is the one that gave it to one of the girls. We didn't prove it beyond a reasonable doubt and we don't have to. But that is what happened to the gun."

We agree with the defendant that the cross-examination and the final remark of the prosecutor were improper where the facts assumed in both were not grounded in competent evidence.

■■ The defendant denied either having a gun or shooting Thornton. Spratt supported the defendant's alibi testimony that he was some distance away when Thornton was shot. The record also reveals that although the defendant was arrested within minutes after the shooting, no gun was found on his person nor on Spratt's person. Undoubtedly the cross-examination was conducted and the final remark made to satisfactorily account for this fact to the jury. But the only evidence that tied the gun to Curry and Spratt was the hearsay testimony of Officer Caccitolo and Officer Davis that when Russell Spratt was brought in for questioning, Marvin Rogers and Andrew Stevens, who were at the police station, stood up and identified Spratt as the one who took the gun from Curry after the shooting. Caccitolo also testified on rebuttal simply that he had asked Spratt "if in fact that Wolf [the defendant's nickname] had past [sic] the gun to him * * *," and Spratt responded "No." Marvin Rogers never testified at trial. Although Andrew Stevens did testify at trial, he never said Curry gave the gun to Spratt. Nor did anyone else testify that Spratt gave the gun to Curry before the shooting,

nor that Curry gave the gun back to Spratt. Nor did anyone testify that Spratt gave the gun either to Connie Smith or to Bernice Hamilton. We feel that for the prosecutor to assume these facts in a question during cross-examination and to use them to buttress his final argument, especially considering the authoritative tone of his remarks, was improper. See *People v. Nuccio*, 43 Ill.2d 375, 253 N.E.2d 353; *People v. Beier*, 29 Ill.2d 511, 194 N.E.2d 280. See also *Jones v. United States* (D.C. Cir. 1964), 338 F.2d 553.

It is unlikely that the other errors alleged will recur when the cause is retried.

For the reasons stated the judgment of the Circuit Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ADESKO AND JOHNSON, JJ., concur.