THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* McKENNIE HOUSTON *et al.*, Defendants-Appellants.

First District (4th Division) No. 77-1654

Opinion filed July 12, 1979.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and J. Jonathan Regunberg, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, the defendants, McKennie Houston and Jackie Robinson, were found guilty of robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1) and theft (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)). Defendant Houston was sentenced to a term of not less than 5 years and not more than 15 years, and defendant Robinson was sentenced to a term of not less than 1 year and not more than 3 years, in the Illinois Department of Corrections. The defendants appeal, and we affirm.

The issues asserted on appeal are (1) whether due process was violated where the State did not produce certain physical evidence for inspection by the defense; (2) whether the State failed to sustain its burden of proof of the offenses of robbery and theft where the testimony of the State's witnesses allegedly failed to prove the necessary elements of force in robbery and criminal intent; (3) whether defendants' conduct at the scene of the crime adequately supports a finding of guilty of robbery and theft under the theory of accountability; (4) whether plain error occurred when the trial court failed to instruct the jury regarding the element of criminal intent in the offense of robbery; and (5) whether the due process rights of defendants were violated when the State made an allegedly improper closing argument to the jury.

On July 12, 1975, Officers Soprych, Garza, Cole, Ford, Perrit, Sharp and Kerr were engaged in a decoy operation for the mass transit unit of the Chicago Police Department. As a decoy, Officer Soprych appeared intoxicated and disoriented for the purpose of being vulnerable to potential pickpockets.

Officer Soprych testified at trial that on July 12, 1975, at approximately 11:30 p.m., he was exiting the subway on the southwest corner of Clark Street, at the intersection of Clark and Division Streets, in Chicago, Illinois. He went into the alcove of a doorway located at 1154 North Clark Street. He was wearing a dark sport coat, a white shirt, tie,

and a pair of dark pants. He stated that he looked tired and drunk, walking with a staggering motion, and his tie was in disarray. He wore a ring on a finger of his right hand and a watch on his left wrist. The ring was made of white metal with a large stone in the center and three smaller stones on either side. He stated it was a cheap ring, costing him $1, but its purpose was to simulate an expensive piece of jewelry.

The other members of the decoy team were located in proximity to Officer Soprych. Officer Cole was on the southwest side of the street, approximately 40 feet away. Garza was directly across the street from Soprych at the bus stop on Clark Street. Ford was on the east side of Clark Street, 30 feet north of Officer Garza. Another officer walked around the intersection of Clark and Division Streets patrolling all the corners, and the other two officers were in a restaurant doorway directly to Soprych's left.

Officer Soprych testified that he stood in the doorway for approximately 15 minutes before he saw defendants walking south on Clark Street toward the doorway. Defendant Houston went into the alcove where Soprych stood and asked whether he needed help. Officer Soprych did not respond and Houston attempted to put Soprych's left arm over his shoulder and Soprych pushed him away. He stated that pushing was a practice by decoy officers designed to discourage people who in good faith would be intending to render assistance. Houston shoved him back into the door and patted his clothing, including his pockets, waist and groin area. On cross-examination, defendants attempted to impeach Officer Soprych by showing that at the preliminary hearing he did not mention that force had been used against him.

Officer Soprych testified on direct examination that Houston removed the white metal ring from his finger, walked over to Robinson, and handed him the ring. Officer Soprych shouted, "Hit," an indication that a crime had been committed and something had been taken from the officer. After the signal was given, the other members of the decoy team converged at the scene, placing defendants under arrest and recovering the ring which had been thrown to the ground by defendant Robinson.

Officer Garza testified that he was across the street from Officer Soprych on the southwest corner of Clark Street. He observed defendants walking south on Clark Street and saw defendant Houston enter the alcove where Officer Soprych was standing. He testified that Houston was "feeling on Soprych," and Robinson was "looking in all directions." Then, Houston came out of the alcove and he and Robinson were "shaking or touching hands." At that point, Officer Soprych left the alcove, yelled "Hit," and all the other officers ran to the scene.

Officer Ford testified that he was on the southeast corner of Division and Clark Streets. He stated he first observed defendants walking

eastbound on Division toward Clark, but when they reached Clark Street they walked in a southerly direction. When defendants saw Officer Soprych in the alcove, Houston entered and began patting down the officer. Robinson was in front of the alcove, looking from side to side. Ford noticed Houston and Soprych pushing and shoving, but could not determine who was pushing whom. Houston then walked over to Robinson and there was an exchange between them "like a handshake." He observed Houston walking back to the alcove and Officer Soprych yelled, "Hit." The officers of the decoy team ran to the scene, and Ford recovered the ring which he saw defendant Robinson throw to the ground.

Defendant Robinson testified that on the night of July 12, 1975, he and defendant Houston were on the southwest corner of the street, heading north toward a restaurant, when they saw a man in the alcove who "seemed like he needed help." Houston entered the alcove and asked the man whether he needed any help, as he acted as though he wanted assistance. Robinson stated there was no pushing or shoving. Houston attempted to place the man's arm over his shoulder in order to lift him, and, at that point, the ring fell from Soprych's finger. Robinson further testified that he had first seen the ring when Houston went into the alcove; it was then on Soprych's baby finger. He also saw the ring fall off Soprych's finger, picked it up, and went into the alcove. Soprych yelled, "Hit," and Robinson threw the ring down. They were then arrested.

The ring was inventoried at the police station and then returned to Officer Soprych. The ring was subsequently lost before trial during another decoy mission.

On the basis of the evidence, the jury found defendants guilty of theft and robbery. The defendants appeal their convictions.

Defendants' first contention on appeal is that they were denied a fair trial when the State did not produce a ring for inspection by the defense and therefore suppressed evidence favorable to the defense. The People argue that their failure to produce the ring for inspection by defendants did not deprive defendants of a fair trial since the omission did not constitute suppression of physical evidence, and defendants did not establish any prejudice toward them by not examining the ring.

On March 10, 1976, defendants filed a discovery motion requesting that any physical evidence intended for use by the State at trial or evidence favorable to the defense be made available to them for inspection before trial. The State answered the discovery motion on July 14, 1976, and listed a glass ring as physical evidence intended for use at trial and available for inspection upon request for an appointment. On May 17, 1977, some 10 months later, defendants requested an appointment to inspect the ring. However, the police officer to whom the ring had

been released had been injured and could not be present in court. The defendants renewed their motion on June 1, 1977, the day of trial, and were informed that the ring was no longer in existence.

The defendants moved to dismiss the indictment on the basis they could not have a fair trial without the ring. They argued, in the alternative, that any evidence concerning the ring be excluded. The court denied the motion.

At a later point in trial, defendants renewed their motion to dismiss the indictment. The court reserved the ruling until the completion of the prosecution's case. At the close of the State's case, the court denied defendants' motion, stating that the ring was available for inspection as of July 1976 when the State filed its answer to discovery and there was no clear showing that defendants had been prejudiced as a result of not having the ring or seeing the ring.

Defendants urge that the trial court's ruling was erroneous because the request to inspect was timely and the failure to produce the ring amounted to suppression of favorable evidence, and that the effect of the suppression was not remedied by the right of cross-examination.

Defendants cite numerous cases in support of their position, but we think that *Brady v. State of Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, is dispositive of the issue in the instant case. *Brady* dictates that suppression by the prosecution of evidence which is favorable to the accused violates due process where such evidence is material to guilt or to punishment, regardless of the good or bad faith of the prosecution. "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Brady*, 373 U.S. 83, 87-88, 10 L. Ed. 2d 215, 219, 83 S. Ct. 1194.

*Brady* embraces the situation involving the withholding of evidence by the prosecution. We do not have that in the instant case. Here, the ring which was used in the decoy operation was released to Officer Soprych and was used in other, later operations. When the State answered defendants' discovery motion, they, in good faith, believed that although the ring had been released to the police officer it still remained in the control of the prosecution.

In May 1977, when the defendants did request an opportunity to examine the ring, the prosecution could not comply with the request because of the officer's unavailability. On the day of trial, defendants again renewed their request to see the ring, but at that time they were advised the ring had been lost by Officer Soprych on a decoy operation. The ring was therefore not introduced at trial.

It is unfortunate that the ring was lost and defendants could not

inspect it, but there is no reason to believe the ring was purposefully concealed by the prosecution, and certainly no evidence that it was lost due to the negligence of the Chicago Police Department.

■■ In an instance where neither the prosecution nor its agents have possession of the evidence, the prosecution cannot be accused of suppressing what they do not possess. *People v. Berry* (1977), 54 Ill. App. 3d 647, 652, 370 N.E.2d 26, 29.

■■ We cannot say, after reviewing the entire record, that failure to produce such evidence mandates reversal of defendants' convictions. *People v. Gaitor* (1977), 49 Ill. App. 3d 449, 454, 364 N.E.2d 484, 488.

The defendants next contend that the evidence failed to sustain defendants' convictions for the offense of robbery and theft because the testimony of the State's witnesses did not prove the necessary elements of force in robbery and criminal intent. Defendants assert that they were only trying to offer assistance to Officer Soprych when Houston entered the alcove. They did not use any force nor did they have the criminal intent necessary to commit the crimes they were convicted of at trial.

Soprych testified that defendant Houston shoved him, patted him down while holding his wrist, and took the ring from his finger. Other members of the decoy team corroborated his testimony. One officer saw the shoving and pushing between the two men, and other officers noted the pat-down of Soprych's clothing.

The degree of force necessary to constitute robbery must be such that the owner's power to retain his property is overcome either by physical violence or placing him in such fear as to overcome his will. *People v. Smith* (1978), 66 Ill. App. 3d 957, 961, 384 N.E.2d 473, 476.

Officer Soprych deliberately acted intoxicated during the entire encounter with the defendants. It is clear that Houston's actions in shoving the officer and holding his wrist indicate he intended to exert a certain amount of force so as to overcome an intoxicated man's will.

The defendants also allege that Officer Soprych's failure to mention at the preliminary hearing the use of force is a material omission going to the proof of an essential element of the offense. The defense believes that such an omission discredits Soprych's testimony at trial.

It is the jury's function to determine the credibility of the witnesses, to weigh the evidence, make reasonable inferences therefrom, and resolve any conflicts that might exist in the evidence. *People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 677.

A reviewing court should not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of defendants' guilt. *Vriner*, at 342.

■■ If there was a conflict between Officer Soprych's preliminary hearing

testimony and his trial court testimony, it was left to the jury to resolve any such conflicts and not for the reviewing court.

■■ After reviewing the evidence, we do not find that it was so improbable as to raise such a doubt as to Houston's and Robinson's guilt.

The defendants next contend that the jury should not have been instructed on the theory of accountability regarding Robinson's participation in the robbery and theft because the evidence was insufficient to prove his accountability for Houston's conduct.

■■ To have a finding of accountability, the State must prove beyond a reasonable doubt that (1) the individual solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense, (2) the participation took place either before or during the commission of the offense, and (3) it was with the concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Tillman* (1971), 130 Ill. App. 2d 743, 749-50, 265 N.E.2d 904, 909.

■■ Defendants cite *People v. Manley* (1971), 1 Ill. App. 3d 693, 696, 274 N.E.2d 373, 376, for the proposition that there must be some evidence which warrants the inference that the accused had prior knowledge concerning the commission of the offense. We concur with that statement and find that in the present case such evidence exists. Robinson, according to Officer Garza's testimony, approached the alcove with Houston and stood at the entrance, looking up and down the street, while Houston took the ring. Houston handed Robinson the stolen ring and he threw it to the ground when he saw the police approach. This evidence adequately supports the inference that defendant Robinson's act was an attempt to aid defendant Houston in the robbery and theft. This clearly supports the court's decision to read the accountability instruction to the jury. There was enough evidence from which the jury could conclude that defendant Robinson's conduct rendered him legally accountable.

As defendants' fourth contention, they urge that plain error occurred when the court failed to instruct the jury that one of the elements of robbery which should have been proved by the State beyond a reasonable doubt was that defendants acted with the requisite criminal intent. *People v. Banks* (1979), 75 Ill. 2d 383, 392, 388 N.E.2d 1244, 1248, is dispositive of this issue. The court there held that robbery requires only a general intent as opposed to specific intent to deprive another of his property.

The testimony of Officer Soprych was substantially corroborated by other members of the decoy team that defendant Houston by use of force took the ring from his finger and gave it to defendant Robinson. The evidence to convict defendants of both offenses was clear and convincing, and no other verdict could have reasonably been returned.

As defendants' final contention, they assert that they were denied their right to a fair trial by the State's alleged improper arguments to the jury.

Defendants cite several instances in the State's closing argument where they find error. Consideration of the remarks in question does not show defendants were denied a fair trial. One argument made was with reference to the introduction of inventory records as evidence instead of the actual items recovered. The prosecutor stated that using the inventory records as evidence of the ring's presence at one time was adequate, along with the testimony of the police officer, to substitute for the ring itself. Such comments complained of represent reasonable inferences to be drawn from the evidence adduced at trial. (*People v. Thomas* (1977), 49 Ill. App. 3d 961, 973, 364 N.E.2d 641, 649.) Another instance that defendants cite is the reference made by the State concerning Robinson's accountability. The defense urges that the prosecution made a statement inferring a legal duty upon Robinson to prevent the commission of the offense. We do not find that such comments require reversal. To hold improper comments sufficient to merit reversal, they must be of a substantial magnitude, when viewed in light of the entire record and argument. (*People v. Martinez* (1977), 45 Ill. App. 3d 939, 943, 360 N.E.2d 495, 498.) Such remarks do not constitute reversible error unless they result in a substantial amount of prejudice to the accused. *People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, 434.

We conclude that the remarks made by the prosecutor in closing argument did not give rise to a substantial amount of prejudice to defendants. Other comments were cited by defendants, but none, individually nor collectively, is sufficient to merit reversal of defendants' convictions.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.