THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN BURTON, Defendant-Appellant.

First District (1st Division)   No. 86—0282

Opinion filed September 6, 1988.

Randolph N. Stone, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Kim A. Novi, and Clarke P. Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, John Burton, also known as "Insane James," was indicted on charges of murder and armed violence for the death of John Turner in an incident that occurred on the evening of April 10, 1986, in a vacant parking lot adjacent to a neighborhood tavern. According to the State's witnesses, Anthony Turner, Charles McKesson, Robert Myles, and Charles Myles, Burton had approached the four witnesses and the victim as the men were getting into the victim's car in the parking lot after leaving the nearby tavern. The defendant came from behind a newspaper stand in the parking lot and stood in front of the driver's side of the victim's vehicle. The witnesses testified that the defendant said to the victim "You think I won't pop you, punk?" and then fired a pistol into the ground near the car. Seconds later, the witnesses testified, the defendant raised his right arm, aimed at Turner through the windshield, and fired the gun once or twice, striking the victim in the face. The victim was pronounced dead at 10:59 p.m. on April 10, 1986. A medical examiner testified that Turner died from a gunshot wound to the right eye that had destroyed the eye and the area of the brain through which the bullet passed before lodging into the base of the brain.

Subsequently, the defendant, John Burton, was found guilty of murder after a jury trial in the circuit court of Cook County and was sentenced to 40 years' imprisonment. Burton has now appealed his conviction and sentence to this court alleging that he was denied his constitutional right to a fair trial when a State's witness, Chicago police detective Thomas Reese, was allowed to testify that the defendant had been arrested on a rape charge prior to his arrest in the instant case, because such testimony effectively destroyed his right to a presumption of innocence. The defendant also contends that the trial court committed reversible error when it allowed the State to argue in its closing statement that he had been identified by a bystander at the scene of the crime and by two eyewitnesses in a lineup, notwithstanding the court's prior ruling that such evidence concerning the by-

stander was inadmissible hearsay and that the evidence at trial established only one lineup identification.

The defendant's first contention of error arose during the cross-examination of Detective Reese. At trial, it was the State's assertion that the reason one of the eyewitnesses, Anthony Turner, had been unable to identify Burton from a display of police photographs, even though he said he was able to identify Burton in the courtroom, was because the defendant had changed his appearance between the time the police photograph had been taken and the time he shot Turner. In an attempt to refute the State's theory by showing that the photograph was in fact a recent photograph, the defendant, on cross-examination, asked Detective Reese if he knew the date on the defendant's photograph in the photo display. When the detective was unable to recall the date, the defense attorney showed him a copy of a police report prepared at the time of the photo display and asked him "whether or not that refreshes your recollection as to when the photograph in the photo display dated to." Detective Reese responded: "This has nothing to do with the date on the photograph. We have arrest cards in our area which indicate that and [are] made out anytime someone is taken into custody [with] the date; and that is what that is in reference to, the date he was arrested for the rape charge." The trial court immediately sustained the defendant's objection to this answer and admonished the jury to disregard that evidence. Following a brief redirect examination of Reese, the State rested its case, and during the recess that followed, the trial court heard the defendant's motion for a mistrial. Although the court denied the motion, finding that the detective's answer was not calculated and was responsive to the question concerning the date on the photograph, the court did state it was amenable to any kind of limiting instruction and suggested the jury be instructed that the defendant was not convicted of the rape charge to which Detective Reese had referred. The defendant, however, refused the offered instruction and did not accept the court's suggestion to tender an instruction of his own.

■ Evidence of prior crimes is generally inadmissible because it tends to persuade the jury that the defendant must be guilty of the crime with which he is charged because his background demonstrates a propensity for bad acts. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.) The State contends, however, citing *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063, that any error that may have occurred when the detective gratuitously mentioned the defendant's prior criminal charge was waived here when the defense counsel told the court that it did not want any special instructions to

the jury to cure this alleged error. In *Nicholson*, the arresting officer, in response to a question concerning the date the defendant was arrested, testified that he did not recall the date and stated here, again gratuitously, that he had used an address from a prior arrest to locate the defendant. The trial court there, like here, recessed the proceedings and, although it also denied the defendant's motion for a mistrial, offered to consider a motion to strike the testimony. No motion was ever made by the defendant and the testimony was allowed to stand. On appeal, this court found that any error arising from the introduction of this evidence was harmless. Furthermore, as the State notes, a trial court is not obligated to exclude all improper evidence elicited in response to a defendant's questions, and nonexclusion of the evidence is particularly appropriate where the defendant does not move to have it stricken or does not request that the jury receive special instructions to disregard it. See *People v. Burage* (1961), 23 Ill. 2d 280, 282-83, 178 N.E.2d 389, 391.

On the other hand, the defendant cites *People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113, and *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778, in support of his contention that the error which occurred here was so harmful it could not be considered waived by his declining an instruction which would highlight the error. In *Watson*, the State in its opening statement stated that the defendant, who was charged with robbery, had also been arrested for another armed robbery two months later, and that the arrest occurred one block from the site of the earlier robbery. The State in *Watson*, however, presented no evidence during the trial concerning this later arrest, other than the arresting officer's testimony that the defendant had been arrested in connection with another "incident." On appeal, this court found the admission of the evidence of other crimes constituted reversible error and that the defendant was entitled to a new trial without such reference to any subsequent arrest of the defendant. Likewise, in *Curry*, an experienced police detective was asked whether he knew the defendant was a member of a particular gang at the time of his arrest. The detective answered: " 'I did because we had two rape warrants out for him with a gang-related incident at the time of the shooting.' " (*Curry*, 25 Ill. App. 3d at 639, 323 N.E.2d at 780.) The court there found that the detective's answer was nonresponsive, without evidential value, and served only to put the jury on notice of the defendant's prior unrelated arrests. The defendant concludes that here, as in those cases, "the prejudicial testimony was given during the presentation of the evidence by the State, and it painted an unhealthy picture of the defendant in the jury's eyes before he had the

opportunity to take the stand in his own defense." (*Curry*, 25 Ill. App. 3d at 641, 323 N.E.2d at 781.) Hence, also as in those cases, the error here was not curable.

■ Contrary to the defendant's assertions, we find the circumstances in this case are dissimilar to those in *Watson* and *Curry*. Unlike either *Watson* or *Curry*, the detective's statement here was responsive to the defendant's question. Furthermore, the trial court here immediately sustained an objection to this testimony and instructed the jury to disregard that evidence. Finally, the trial court offered to give the jury an additional curative instruction if the defendant so desired, but the defendant declined the court's offer. Accordingly, based on the record presented to this court, we find no reversible error occurred and that if error did occur it was cured by the trial court's action of sustaining the defendant's objection and instructing the jury to disregard the statement.

■ The defendant also complains that further error occurred during the State's redirect examination of Detective Reese which, according to defendant, had the effect of highlighting this arrest. In particular, the defendant contends that the court erred in permitting the State to ask the detective whether the report had several different sentences, whether one of the sentences referred to an arrest on a particular date, and whether those sentences merely constituted an administrative reference to an entirely unrelated police photograph book. Over defense counsel's objection, the witness was allowed to answer in the affirmative to both questions. This inquiry, the defendant asserts, was error. We disagree. We find that the State's inquiry on redirect was a proper clarification of the testimony the defendant had attempted to elicit on cross-examination and, thus, cannot be considered a basis for any error. *Cf. People v. Thillet* (1981), 99 Ill. App. 3d 439, 442, 425 N.E.2d 558, 559-60.

■ We further note that the standard of review for reversal, in this situation, is whether "the properly admitted evidence is so overwhelming that no fair minded jury could have voted for acquittal." (*People v. Lindgren* (1980), 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244.) Consequently, reversal is not required unless the record affirmatively shows that any claimed error was prejudicial. In this case, the defendant was viewed by four eyewitnesses in a parking lot near a streetlight for several minutes, and, although Anthony Turner had only seen the defendant on two prior occasions, the other three witnesses were well acquainted with the defendant, and all four witnesses had identified the defendant as the person who had shot John Turner. Robert Myles testified that he had known the defendant for 12 years, even though it

was stipulated that if Chicago police detective Fields were called to testify he would state that Myles had told him during the investigation that he had known the defendant for two years. Charles Myles testified that the defendant had dated his sister in the past and that he had known the defendant for slightly less than 10 years. Charles McKesson stated that he had known the defendant for seven to eight years. All of these witnesses identified the defendant as the person who had shot and killed John Turner. In view of this overwhelming evidence against the defendant, we find any error here to be harmless.

The defendant's second basis for reversal is the alleged improper argument of the State during the closing statement. In particular, the defendant complains of the State's contention in closing that defendant had been picked out of a lineup by two eyewitnesses as being the shooter when only one witness had identified him in a lineup. The defendant's objection to this argument by the State, however, was overruled. The State also argued in closing that "the four eyewitnesses were clear, convincing, and credible. But that's really not the only eyewitness testimony that you heard because two other witnesses told you about the woman in the parking lot who named Insane James as being the murderer." Here, the court sustained an objection by the defendant that this was improper hearsay and instructed the jury to disregard the statement. The defendant asserts that this argument was a clear and intentional misstatement of the evidence and encouraged the jury to use hearsay evidence to convict him. We do not agree and do not find reversible error in the State's closing argument.

Charles McKesson had testified during the trial that he had identified the defendant both in a police photograph and again later in a lineup. Although McKesson was the only witness at trial who testified that he had picked the defendant out of a lineup, Detective Reese testified that both Charles Myles and Charles McKesson were brought to the station to identify the defendant and that both witnesses, in fact, picked the defendant out of the lineup. Since Charles Myles did in fact testify that he was brought down to the station concerning the shooting, and Detective Reese said Myles, along with McKesson, had picked defendant out of a lineup, the State's argument was a permissible inference from the evidence. See *People v. Houston* (1979), 74 Ill. App. 3d 586, 393 N.E.2d 529.

In regard to the defendant's assertion that the State urged the jury to consider hearsay evidence by arguing that a woman in the parking lot the night of the shooting had identified Burton as the killer, the record establishes that when the police officers called to the scene were investigating the shooting, people gathered near the vic-

tim's car in the parking lot and an unknown woman yelled out "Insane James shot Chico [John Turner]." At trial, the court sustained an objection to Officer Watkins' testimony that he had heard a "random female voice" in the crowd when he was investigating the shooting, and it was not established what the woman had said. During the defense's cross-examination of Anthony Turner he denied he had told police that someone had told him that defendant had shot his brother, asserting that he knew who had shot his brother because he was there when it happened. The State, however, on redirect asked Anthony how he learned that James was also John Burton, and Anthony responded that he had "heard someone holler out Insane James shot Chico." However, the woman was never identified; it was never ascertained if the woman had witnessed the shooting; and there was no evidence of the amount of time that elapsed between the shooting and her statement.

██ █ The State contends that the woman's statement was an explanation of a recent, startling event and, hence, admissible as a *res gestae* declaration. However, we do not believe that the evidence is sufficient to support this assertion of the State (see *People v. Miller* (1978), 58 Ill. App. 3d 156, 162, 373 N.E.2d 1077, 1081-82 (Green, P.J., specially concurring)), which is made for the first time on appeal. Hence, contrary to the State's assertion, we find that the trial court properly ruled that this evidence was inadmissible hearsay and further find that the State should not have urged the jury to consider the woman's alleged identification of the defendant as corroboration of the other witnesses' identifications. Nonetheless, any error here was cured when the trial court immediately sustained defense objections to this line of argument and instructed the jury to disregard any reference to the unidentified woman. (*People v. Wilson* (1981), 92 Ill. App. 3d 370, 415 N.E.2d 1315.) Again, any error under these circumstances was harmless because of the certainty of the identification of the defendant here by the four eyewitnesses and the fact that this testimony had been subject to cross-examination by the defendant. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) Accordingly, we find that this portion of the State's closing argument, even though improper, does not require reversal.

For all of the reasons stated above, we accordingly affirm the judgment and sentence of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.