(No. 37097.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JEWELL EDWARD JONES, Plaintiff in Error.

*Opinion filed November 30, 1962.*

AUSTIN LEWIS, of Granite City, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DICK H. MUDGE, JR., State's Attorney, of Edwardsville, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

After a bench trial in the circuit court of Madison County, the defendant, Jewell Edward Jones, was convicted of the murder of Paul Dean White and sentenced to the penitentiary for a term of ninety-nine years. Upon this writ of error he contends (1) that it was error to deny his motion to quash the indictment; (2) that there was a total failure to prove the *corpus delicti;* and (3) that the evidence was insufficient to support a conviction of murder.

About noon on July 31, 1959, Paul Dean White, an eleven-year-old boy, left his home in South Roxana, Illinois. Before he left, he told his mother that he was going to be with Harry Marshall, a photographer who traveled about with a pony, taking children's pictures. The boy did not return home and a thorough search did not locate him. About four months after the boy's disappearance, the skeletal re-

mains of a human body were discovered by hunters in a field of corn stubble about five miles south of Roxana. The remains were clothed in blue jeans, socks, shoes, and underwear which were identified by his parents as the clothing worn by Paul Dean White on the day of his disappearance.

Two witnesses who discovered the body, and a police officer who arrived at the scene before the body was removed, testified that it appeared that the body had been moved or run over by a corn picker which had cut the corn while the body was there, or that animals had disturbed it. A pathologist who performed an autopsy testified that the skull had been fractured in several places by the application of some external force but that he was unable to ascertain the cause of death. He further testified that he took the body to be that of a boy of about eleven years of age.

Harry Marshall, the photographer, testified that he had seen the boy at the carnival grounds at Roxana Park on July 31, 1959, the day he disappeared. A police officer testified that in September of 1960 he questioned the defendant about the boy's death. The defendant denied that he was in the vicinity when the boy disappeared. The officer made arrangements to question him further the following day, but he could not be found. He was finally taken into custody in Cape Girardeau, Missouri, on September 11, 1961. Two days later, he was returned to Illinois where he signed a written statement which was introduced into evidence.

In his statement the defendant gave the following account. On the afternoon of July 31, 1959, he encountered the boy at Roxana Park, and the two drove away in defendant's car. After a short drive, defendant parked the car and proceeded to take indecent liberties with the boy. After he had started driving again, the boy grabbed at defendant's pants. In pain, defendant began striking the boy with his arm and the back of his fist. The boy pleaded with the defendant to stop and attempted to open the car door. Defendant tried to grasp the boy before he fell out of the car,

but was unsuccessful. He stopped the car, backed up, and jumped out. The boy was still "kicking and jerking around." The defendant put him in the trunk of the car, drove a short distance along the highway before he turned off on a side road and stopped the car. He smoked several cigarettes and drank some whiskey. He took the body from the trunk of the car and carried it to a cornfield where he left it. He went to his mother's home where he changed clothes and departed for Missouri. On the way he burned his clothes and washed the trunk of his car with ammonia to remove the blood stains. He went on to Texas where he obtained a job with a road show.

No evidence was offered on behalf of the defendant.

The indictment charges that the defendant "unlawfully, feloniously, wilfully and of his malice aforethought, with his bare hands and fists, did strike and beat Paul Dean White, thereby causing said Paul Dean White to fall from a moving automobile then and there driven by said Jewell Edward Jones and as a result * * * the said Paul Dean White did sustain * * * mortal wounds and injuries of which * * * said Paul Dean White thereafter died * * *."

The defendant contends that this indictment is insufficient to charge him with the crime of murder because "the striking of the deceased with bare hands and fists is not such an act that would, in its consequences, naturally tend to destroy life." He points out that the indictment contains no allegation that the defendant had any deadly weapon, instrument or other thing in his hands, and argues that the defendant could therefore at most be found guilty of manslaughter.

The statute defining the crime of murder, however, does not require the use of a deadly weapon. It provides that the "unlawful killing may be perpetrated by poisoning, striking, starving, drowning, stabbing, shooting, or by any other of the various forms or means by which human nature may be

overcome, and death thereby occasioned." (Ill. Rev. Stat. 1959, chap. 38, par. 358.) In *Koser* v. *People,* 224 Ill. 201, 206, the court held sufficient an indictment for murder which charged that the defendant "with his right fist did then and there unlawfully, wilfully, feloniously and of his malice aforethought strike him, * * * a violent blow in and about the face * * * thereby knocking [him] down with great force and violence, upon divers stones and rubble upon the ground * * *" thereby causing the death of the deceased. See also *People* v. *Swiontek,* 391 Ill. 618, 620.

Malice is an essential element of the crime of murder, but "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." (Ill. Rev. Stat. 1959, chap. 38, par. 358.) While it is true that malice would not ordinarily be implied from an assault and battery with the hands or fists alone, (*People* v. *Crenshaw,* 298 Ill. 412,) evidence showing the character of the assault and the circumstances under which it was made may be sufficient to establish malice. *People* v. *Shields,* 6 Ill.2d 200.

The motion to quash the indictment was properly overruled.

The defendant concedes that the fact of death has been proved beyond a reasonable doubt but denies that the People have properly established another element of the *corpus delicti,* the fact that death was caused by the criminal agency of some person. The condition of the body when it was found made it impossible to establish the cause of death by medical testimony, and the defendant's position is that the confession or admission of an accused is not sufficient, without corroborating evidence, independent of the confession or admission, which establishes the *corpus delicti.*

This contention and similar contentions have been frequently advanced and frequently discussed in the opinions of this court. We are of the opinion that the sound rule is that originally laid down in *Bergen* v. *People,* 17 Ill. 426,

429: "It is the mere naked confession, uncorroborated by any circumstance inspiring belief in the truth of the confession, arising out of the conduct of the accused, or otherwise, we hold insufficient to convict; and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the *corpus delicti.*" There have been deviations from time to time. See, *e.g., May* v. *People,* 92 Ill. 343, in which the proposition announced in the *Bergen* case seems to have been overlooked or disregarded.

On the whole, however, the opinions of this court, although they frequently merge the discussions of other issues with this one, adhere basically to the *Bergen* case. In *People* v. *Nachowicz,* 340 Ill. 480, 495, the court said: "While it has been held that a defendant's confession, when the *corpus delicti* is not otherwise proved, is insufficient for a conviction, this does not mean that the *corpus delicti* must be proved by the evidence, aside from the confession, beyond a reasonable doubt. On the contrary, it was early held that it is the mere naked confession, uncorroborated by any circumstance inspiring belief in its truth arising out of the conduct of the accused or otherwise, which is held insufficient to convict, and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the *corpus delicti. (Bergen* v. *People,* 17 Ill. 426.)" It is upon this basis that the convictions in the *Nachowicz* case, as well as in *People* v. *O'Neil,* 18 Ill.2d 461, 463-5, and many other cases were affirmed. See also the treatment of this problem in *People* v. *Henderson,* 378 Ill. 436, 446; *People* v. *Brown,* 379 Ill. 262, 267.

In this case the testimony of other witnesses established that the boy was last seen alive at the carnival grounds, where, according to the defendant's statement, he entered the defendant's car. The boy's body was found in the cornfield where the defendant said he placed it. When the defendant was being questioned by police officers about the disappearance of the boy, he first denied that he was in the

area when the boy disappeared, and then fled. In light of this evidence, we are of the opinion that the *corpus delicti* has been proved beyond a reasonable doubt.

Finally, the defendant contends that the evidence is insufficient to support a conviction of murder, because the State failed to prove the element of malice.

While malice is an essential element of the crime of murder, it is well established that malice is implied when all of the circumstances of the killing show an abandoned and malignant heart. It is not necessary to justify a conviction of murder that the accused should have deliberately formed an intent to kill. It is sufficient if at the instant of the assault he is actuated by that wanton and reckless disregard for human life that denotes malice. *People* v. *Jordan,* 18 Ill.2d 489, 494.

The circumstances here show such a wanton and reckless disregard for human life. The boy was beaten by the defendant in a moving car. "I don't know how many times : I just kept hitting him and he was hollering, 'stop, stop,' all the time." To escape the beating the boy opened the car door and fell or jumped out. The defendant then backed his car, "It is possible I may have backed over him. I don't know. His body wasn't under the car when I stopped. He was kicking and jerking around so I opened up my trunk, pushed my tools around, then as fast as I could I picked him up, put him in the trunk, then slammed the lid." The defendant then carried the boy's body into the cornfield. The defendant's frame of mind may be inferred from his concealment of the body, his immediate flight, and his denial and subsequent flight when he was first questioned by police officers a year after the crime was committed.

The defendant's guilt was proved beyond a reasonable doubt, and the judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*