THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAM COLLINS *et al.*, Defendants-Appellants.

(Nos. 54033, 54177 cons.;

First District—March 19, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut, James N. Gramenos, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendants were found guilty after a bench trial of the offense of armed robbery. Judgment was entered and defendant Collins was sentenced to three to eight years and defendant Washington was sentenced to two to five years. On appeal defendants contend (1) that they did not knowingly and intelligently waive their right to a jury trial and (2) that the prosecutor's improper cross-examination of defendant Washington violated their constitutional rights.

Defendants do not challenge the sufficiency of the evidence. The evidence may be briefly summarized. On January 3, 1966, at 1:00 A.M., the defendants and a Rose Mary Jones, a co-indictee with defendants,* entered the apartment of Jesse Powers. After a couple of minutes defendant Collins demanded money. When Mr. Powers told the defendants that he did not have any money Collins hit him in the face and broke his glasses. The defendants then tied Mr. Powers to the bed and Collins hit him with a bayonet blade in the head and arms and threatened to kill him. Washington then lit a cigar, stuck it near Mr. Powers' eyes and threatened to burn them out if he did not hand over his money. Collins proceeded to gouge Mr. Powers in the groin with a butcher knife. Defendants continuously threatened Mr. Powers throughout the robbery. Defendants ransacked the apartment and took approximately $2,000 worth of cash and merchandise.

Mr. Powers positively identified the defendants as the robbers both

---

* Rose Mary Jones pleaded guilty and was placed on probation.

at a lineup and at trial. Rose Mary Jones, testifying for the State, also identified the defendants as those involved in the robbery.

*Opinion*

Defendants contend that they did not knowingly and intelligently waive their rights to a jury trial. After defendants' counsel stated that he was ready for trial, the following colloquy occurred:

"MR. FISHMAN [defendants' counsel]: A bench trial. May we have a jury waiver?

THE COURT: You know what a jury trial is?

DEFENDANT COLLINS: We are having a bench trial, aren't we?

MR. FISHMAN: That's right.

THE COURT: I want to make sure you are waiving a jury trial, you know what a jury trial is. You are waiving it and being tried by the bench rather than by the jury?

DEFENDANT COLLINS: Yes.

THE COURT: All right, let the jury waivers be recorded."

During the aforesaid colloquy defendant Washington remained silent. However, as shown, his counsel stated that there would be a bench trial and asked for a jury waiver form which Washington signed. In *People v. Sailor*, 43 Ill.2d 256, the court stated:

"The record reveals that defendant's counsel, in her presence and without objection on her part, expressly advised the court that the plea was 'not guilty' and that a jury was waived. An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in, and to be bound by, his action."

See also *People v. Adorno*, 126 Ill.App.2d 98.

■■ We find no merit in defendants' contention that the court failed in its duty to see that defendants' waiver of a jury trial was understandingly and knowingly made.

We believe that the circumstances of this case distinguished it from *People v. Baker*, 126 Ill.App.2d 1, the principal authority relied upon by defendants.

Defendants point out that when they signed the jury waiver forms defendant Collins signed his name to the form of defendant Washington and defendant Washington signed his name to defendant Collins' form. We consider this a technicality of no consequence.

Defendants also contend that the prosecutor's improper cross-examination of defendant Washington violated their constitutional right to be confronted with the witnesses against them. On cross-examination Washington was asked several questions as to whether he had told

"someone" or an Officer Manion that Collins had committed the robbery. Washington denied that he had made any statement implicating Collins in the robbery. Neither the "someone" nor Officer Manion referred to by the prosecutor was called in rebuttal by the State. Defendants claim that these questions prejudiced their rights to confront their accusers and cross-examine them.

■■ During the alleged improper cross-examination of Washington defendants' counsel only once objected to the questions asked Washington. However, defendants' counsel then informed the court that he was withdrawing his objection. Since no objection was made the alleged error, if any, was waived. *People v. Trefonas*, 9 Ill.2d 92; *People v. Payton*, 124 Ill.App.2d 78; and *People v. Jenkins*, 131 Ill.App.2d 49.

At oral argument on appeal defense counsel cited *People v. Nuccio*, 43 Ill.2d 375, in support of their argument that the prosecutor's cross-examination was improper. In *Nuccio* the defendant aso argued that he was deprived of the opportunity to confront the witnesses against him due to the improper prosecutorial questioning of defendant and his witnesses. This argument was predicated upon "a persistent course of cross-examination by which the State repeatedly insinuated, generally without any supporting testimony, that defendant and his witnesses had engaged in a pattern of reprehensible conduct  *  *  *  ." (*People v. Nuccio, supra,* 381.) The court then catalogued a number of relevant examples of the State's unsupported insinuations. The State presented no rebuttal testimony to the defense witnesses' specific denials of misconduct.

The court believed that it was apparently the State's position that the questions were legally improper when asked but that the defendant waived his objection to their prejudicial effect by failing to object at trial. However, as the court at page 394 stated:

"Defendant urges that he is entitled to assume the prosecution would not ask such patently prejudicial questions unless proof of the threats was available, and, therefore, he is under no obligation to object thereto, particularly where he moves for a mistrial as soon as the inability or unwillingness of the State to produce such proof is manifested. With this we agree.

We do not intend this opinion to indicate that no objection should have been made by defendant to any of the testimony herein quoted."

In the instant case there were only a few questions asked by the prosecutor as to whether Washington had ever told anyone that Collins had committed the robbery. Therefore, there was no persistent pattern of conduct as in *Nuccio*. Furthermore, the defense never redirected the

court's attention to this matter at the close of the evidence, nor did it move for a mistrial.

In *Nuccio* (*supra*, at page 396) the court also bases its decision to reverse and remand on the fact that the guilt of defendant was "not manifest" but was dependent upon the degree of credibility accorded the defense witnesses by the trier of fact. In the instant case, however, the guilt of defendants was "manifest" and no question has been raised in this court as to the sufficiency of proof. The defendants were positively identified and implicated as the robbers both by the victim and by Rose Mary Jones, a co-indictee, who testified for the State.

The judgments are affirmed.

Judgments affirmed.

ENGLISH, P. J., and LORENZ, J., concur.