(No. 37640.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEMONT PIERCE, Appellant.

*Opinion filed May 22, 1972.*

8

WARD, J., took no part.

DONALD E. EGAN, of ROTHSCHILD, BARRY & MYERS, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMÈS B. ZAGEL, Assistant Attorney General, ROBERT A. NOVELLE, Assistant State's Attorney, and ZENON FOROWYCZ (Graduate Law Student), of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Lemont Pierce, herein referred to as defendant, and two others, Robert Berry and Walter Caffey, were indicted for the murder of Jake Jones, Jr. Pierce and Berry were jointly tried by a jury in the circuit court of Cook County which acquitted Berry but found Pierce guilty of voluntary manslaughter. He was sentenced to fourteen years in the penitentiary and appeals, contending: (1) he was denied due process by the police lineup procedures; (2) he was not proved guilty beyond a reasonable doubt; (3) the jury should not have been given instructions on voluntary manslaughter, and (4) the failure to sequester the jury requires that he be granted a new trial.

On the evening of August 13, 1960, Pierce, Caffey and the deceased, Jake Jones, Jr., left a party. An argument developed between Pierce and Jones over events which had occurred earlier that day in which the latter was said to have struck Berry with a pipe during an altercation. As they approached 15th and Kedvale in Chicago, they met

Shirley Skipper who said that Jones had raped her friend. The argument intensified and Jones struck Pierce.

At this point the facts are in dispute. Defendant testified that he avoided the first blow and struck Jones, knocking him to the ground; that in falling, Jones hit his head against an automobile; that as defendant attempted to help him, Jones struck at him and he then kicked Jones in the face. The fight continued until Jones was rendered unconscious. Defendant further testified that after unsuccessfully attempting to revive Jones, he went to call an ambulance and during his absence Caffey allegedly kicked Jones.

Shirley Skipper, called as a court's witness, substantially corroborated defendant's version of the incident. She denied, however, giving an answer which was contained in her signed statement made to an assistant State's Attorney in which she related that defendant had struck Jones with a street sign. Other witnesses testified that there had been an altercation between Jones and defendant.

Georgia Carr, who resided at 1503 S. Kedvale Avenue, testified that about 9:30 P.M., she was sitting at her bedroom window located 15 to 18 feet from the scene. The area was sufficiently lighted by a street light. She observed about 10 or 15 boys on the corner cursing and fighting. She identified defendant, Berry, Caffey and Lee Turner, whom she previously knew, as being with the group. Specifically, she testified that she observed Caffey hitting the deceased who was being held by the defendant and Berry. After the deceased fell to the ground, he was kicked several times by Berry, Caffey and the defendant. She further testified that she saw someone holding a street sign, which was being raised and lowered but did not know whether it came in contact with the deceased. She then called the police.

The following morning she was requested to view a lineup, but was not informed who was in the lineup, nor did she talk to any police officer prior to the viewing.

Upon looking into a room through a small window, she saw seven youths standing in line and identified defendant Pierce, Berry and Caffey.

It was stipulated at trial that death was caused by a subdural hematoma, a head injury.

Defendant now argues that this lineup identification denied him due process, for the totality of the circumstances was "unnecessarily suggestive and conducive to irreparable mistaken identification." *(Stovall v. Denno, 388 U.S. 293, 302, 18 L.Ed.2d 1199, 87 S.Ct. 1967.)* We do not agree. The record adequately demonstrates that Georgia Carr's identification was not a result of any police coercion or unduly suggestive identification procedure. Defendant, himself, testified that he beat and kicked Jones. Moreover, no motion to suppress the out-of-court identification was made, nor did defense counsel object to her identification testimony at trial. Under such circumstances we have held that defendant waives his right to challenge an allegedly improper identification. *People v. Fox, 48 Ill.2d 239.*

Defendant also claims that Georgia Carr's testimony was insufficient to prove him guilty of voluntary manslaughter beyond a reasonable doubt. He argues that her testimony is unworthy of belief and that absent this crucial testimony the evidence would support only a conviction for involuntary manslaughter.

We find defendant's contention without merit. Under the statute in effect at the time the incident occurred, involuntary manslaughter was defined as "*** the killing of a human being without any intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner ***." (Ill.Rev.Stat. 1959, ch. 38, par. 363.) Voluntary manslaughter was committed if the killing resulted from a violent irresistible passion incited by the deceased's attempt to inflict a serious personal injury on

the person who kills. *People v. Harris, 8 Ill.2d 431, 434;* Ill.Rev.Stat. 1959, ch. 38, par. 362.

Although the evidence is conflicting and contradictory, there is sufficient evidence to establish that Jones attempted to strike the defendant while they were engaged in a quarrel concerning a prior battery and rape. Defendant testified that he then struck and repeatedly kicked Jones during the ensuing altercation. A mutual quarrel or combat may result in sufficient provocation to reduce a charge from murder to voluntary manslaughter. (See *People v. Crews, 38 Ill.2d 331, 335.*) From the record in the present case, even disregarding Georgia Carr's testimony, we believe there was ample evidence presented to the jury from which they might conclude that defendant's actions resulted from an intense passion precipitated by the quarrel and Jones' attempt to strike the defendant. Therefore, defendant's conviction for voluntary manslaughter was proper.

Defendant further argues that it was error to give jury instructions on voluntary manslaughter to which defense counsel had objected. Voluntary manslaughter is a lesser included offense of the charge of murder *(People v. Pratt, 46 Ill.2d 99)*. In *People v. Latimer, 35 Ill.2d 178,* we held that the giving of a manslaughter instruction was required where there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter (see also *People v. Joyner, 50 Ill.2d 302),* and the failure to so instruct under such circumstances would constitute error. *(People v. Canada, 26 Ill.2d 491.)* We do not believe the facts of this case warrant this conclusion. As we have stated, the record before us provides sufficient factual basis to support a conviction for voluntary manslaughter. The trial court, therefore, did not err in instructing the jury as to this crime.

Defendant finally contends that the trial court's failure to sequester the jury entitles him to a new trial. The

record clearly reveals that on the first day of his trial he consented to the separation of the jurors. He maintains, however, that he did not consent to their separation on the subsequent eight days of the trial.

The trial judge stated, in denying defendant's motion for a new trial, that "the jurors were separated at night with the consent and understanding of the defendant." He later vacated the order denying the new trial so as to further review the transcripts and his notes, and then sentenced the defendant after finding no error was committed.

Another judge presided at the hearing on the certification of the bill of exceptions. Testimony was heard from the reporter, the assistant State's Attorney, the defendant and his attorney. The court reporter testified that he had been instructed to prepare a contempt of court order for a spectator who had been involved in a violent incident in the courtroom during the second day of the trial. The assistant State's Attorney testified that while the reporter was so occupied he, the two defendants, their counsel and the judge went into the judge's chambers. While there the defendants waived their right to have the jury sequestered. Defense counsel admitted that sequestration was waived on the first day, but did not believe the waiver encompassed the entire trial, nor did he admit to a subsequent waiver. The defendant denied ever having waived sequestration. After the hearing, the judge found that, while in chambers, the defendant was advised of his rights and waived sequestration of the jury.

The law applicable at the time of defendant's trial (January, 1961) allowed him to waive the right to sequestration of the jury and, absent a showing in the record that he objected to separation, the presumption would arise that he did waive that right. *(People v. Meyer, 331 Ill. 608.)* The judges, examining the circumstances surrounding his claim that he did not consent to separation, held that he did consent and thereby waived his right

to have the jury sequestered. The record before us indicates that the defendant was present in court each evening when the judge admonished the jury before permitting them to separate, but at no time did the defendant or his counsel object. Thus, the defendant is held to have consented to the separation and cannot now claim that as reversible error entitling him to a new trial. *People v. Meyer, 331 Ill. 608.*

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.