THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES K. MULDROW, Defendant-Appellant.

(No. 59279; )

First District (2nd Division)—March 18, 1975.

*Supplemental opinion upon rehearing filed July 15, 1975.*

James D. Montgomery and Carl M. Walsh, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., William J. Haddad, Laurence J. Bolon, and Frances T. Norek, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This action was brought on an indictment for murder arising from an altercation in the home of the appellant, Charles K. Muldrow (hereinafter defendant), on August 29, 1971. On March 15, 1973, defendant was found guilty of the murder of Gregory Braswell after a bench trial and was subsequently sentenced to a term of not less than 14 nor more than 20 years in the penitentiary. This appeal is taken to review that judgment.

The issues presented on appeal are these:

(1) whether the State failed to prove the homicide was unjustified and malicious;

(2) whether the trial court failed to presume defendant innocent until proven guilty, in that the court allegedly rejected a reasonable hypothesis of innocence, that is, justification;

(3) whether the State failed to prove defendant guilty beyond a reasonable doubt;

(4) whether the trial court improperly shifted the burden of proof to defendant; and

(5) whether certain alleged improper inferences drawn from the evidence by the State in closing argument were saved for review in this court.

The evidence adduced in the court below can be summarized as follows. The defendant, Charles Muldrow, was the landlord of Gregory and Veola Braswell on August 29, 1971, the day of Gregory Braswell's death. The defendant lived approximately two blocks from the Braswell

apartment. Veola Braswell informed her husband on the evening of the day in question that certain parts of the premises they were renting from defendant were in disrepair. At approximately 8:30 P.M. on August 29, 1971, Gregory Braswell telephoned defendant to inquire when the premises would be repaired. (Shortly before the telephone call, defendant had been arrested for a traffic offense and had been detained in a police station for about 30 minutes.) When Braswell complained to defendant about the condition of the leased premises and inquired as to when the condition would be repaired, defendant hung up the telephone. After the conversation, Braswell informed his wife that he had not learned when the repairs would be made and proceeded to defendant's home immediately thereupon. Gregory Braswell was intoxicated at the time.

A few moments after her husband's departure, Veola Braswell telephoned the Muldrow residence to speak with defendant's wife, who was a friend of hers. Defendant informed Veola Braswell that his wife was not at home. Veola told defendant that her husband was on his way to defendant's home and that he wanted to know when the rented premises would be repaired. Mrs. Braswell testified that defendant said, during the course of their conversation, that "you [Mrs. Braswell] ain't going to have a husband no more, because I am going to kill him." Mrs. Braswell further testified that, at that point in the conversation, she heard defendant's doorbell ring and that she asked defendant not to open the door if it was her husband. According to Mrs. Braswell, defendant then hung up the telephone. Mrs. Braswell dressed immediately, proceeded to defendant's home, and, upon her arrival there some 5 minutes later, saw her husband being removed from defendant's home on a stretcher by the police.

Defendant's testimony regarding the two telephone conversations he had had with the Braswells was similar to that just recounted, save defendant's denial that he had threatened to kill Gregory Braswell.

On August 29, 1971, the victim was 24 years of age, weighed approximately 152 pounds, and stood 6 feet tall; the defendant was 26 years of age, weighed approximately 230 pounds, and was somewhat shorter than the victim.

The State offered the testimony of a number of city of Chicago policemen and photographic exhibits from the scene of the incident. This evidence may be summarized as follows: when the police arrived at the defendant's residence, defendant was standing in the living room and the deceased was lying, in an injured condition, in a small, narrow hallway between the living room and kitchen area; that on the floor in the hallway was a large pool of blood and some blood on the floor in the kitchen; that on the sink counter in the kitchen was a knife, approxi-

mately 8½ inches long, with blood on it; that none of the policemen saw any signs of marks or injuries on the person of the defendant; and that the defendant said he had just stabbed a guy.

A coroner's pathologist testified that nine stab wounds had been inflicted upon Gregory Braswell: (1) a slash above the victim's right eyebrow; (2) a slash on his neck; (3) a cut from the blade, which entered his right chest and pierced the periphery of his heart, severing a major artery; (4) a cut that also entered the right chest, near the other, which penetrated a blood sac near his heart; (5) a wound where the blade entered his left chest, angled toward his heart, and penetrated the pumping part of the heart; (6) a wound on the left side of his chest, where the blade had cut across his chest toward his heart; (7) a wound at the lower-left chest near his abdomen; (8) a cut to the lower-left side of his chest, at the level of his navel; and (9) a cut at the lower-left side of his chest, which severed a major artery. The pathologist further testified that the wounds around the right chest and the lower abdomen were the most significant, in that they caused heavy bleeding in the victim. Additionally, the pathologist found the victim's blood to contain 173 mg. percent of ethanol or drinking alcohol which indicates the victim was intoxicated.

Defendant testified, in pertinent part, that after the doorbell rang, he opened the front door to his home, but that he did not invite Gregory Braswell inside; that he and Braswell then began arguing about the condition of the premises that the Braswells were renting; that Braswell pushed him in order to gain entry into the home, but that he did not strike the defendant; that he then followed Braswell into the home and that, shortly thereafter, he and Braswell emerged through the front door together, whereupon they continued arguing; that Braswell asked defendant to come outside and fight, but that he declined; that Braswell then pushed by defendant once again and entered defendant's home; and that he and Braswell then began wrestling and fighting in the living room-dining room area of defendant's home, which altercation lasted less than 1 minute.

Continuing his testimony, defendant stated that throughout the altercation in the living room-dining room area, only one punch was thrown, that by the victim, who missed the defendant and fell to the floor. Braswell then got to his feet and ran into the kitchen to a counter near a sink, where he grabbed a long-blade butcher knife. Defendant ran after Braswell into the kitchen, but did not see the knife on the counter from his position behind Braswell. Defendant, standing behind Braswell, who held the butcher knife in his right hand, gained control over the victim by holding Braswell's head in a headlock with his left arm and grabbing

Braswell's right hand from behind with his own right hand. When defendant grabbed the victim's hand to wrest the knife from him, defendant stated that Braswell slashed himself on the neck, became infuriated at the sight of blood, and began to attack defendant. At this point, defendant had possession of the knife and had released Braswell from the headlock.

Defendant further testified that he was, at this time, standing with his back to the kitchen counter near the sink. According to defendant, Braswell ran toward the defendant and the defendant stabbed him; after he had been stabbed, Braswell backed off about 3 feet and defendant pulled the knife out of the victim. After the initial charge, defendant testified that "it was just as if I hadn't even stabbed him." Braswell charged the defendant again and again, each time defendant stabbing him one or more times, until finally, after approximately 1 minute had passed from the time of the first stabbing, Braswell fell to the kitchen floor and did not get up again. At one point, defendant testified, Braswell reached for a kitchen chair, but defendant "motioned with the knife," and Braswell let go of the chair and charged defendant again. Defendant stated that throughout the entire series of stabbings Braswell never cried out in pain.

After the victim had collapsed, defendant telephoned the police, who arrived within a short time.

Lynette Hill, who was 13 years of age on August 29, 1971, testified at trial on defendant's behalf, and stated that, on the evening in question, she was visiting a next door neighbor of the defendant, Yvette Genus, and that she had observed the following. Gregory Braswell rang defendant's doorbell, and, after defendant answered the bell, he and defendant engaged in an argument. She heard Braswell invite defendant outside to fight. On cross-examination, Miss Hill testified that she could not remember stating at a pretrial hearing that Braswell did not say that he wanted to fight defendant.

Yvette Genus, also called on defendant's behalf, gave testimony which was, in great part, similar to that which had been given by her friend, Lynette Hill, regarding the altercation between defendant and Gregory Braswell. She testified at trial, on direct examination, that she had not seen defendant stab Braswell. However, on cross-examination Miss Genus testified that, at a pretrial hearing, she had stated that she had seen defendant stab Braswell.

## I.

We shall address ourselves to three of the issues defendant raises on appeal in one discussion, as the issues are closely interrelated. They are:

(1) whether the State failed to prove the homicide was unjustified and malicious; (2) whether the trial court failed to presume defendant innocent until proven guilty, in that the court allegedly rejected a reasonable hypothesis of innocence, that is, justification; and (3) whether the State failed to prove defendant guilty beyond a reasonable doubt.

Illinois' Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1) provides in pertinent part:

"§ 9—1. Murder.

(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another;"

Sections 7—1 and 7—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 7—1 and 7—2) provide:

"§ 7—1. Use of Force in Defense of Person.

A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

§ 7—2. Use of Force in Defense of Dwelling.

A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if:

(a) The entry is made or attempted in a violent, riotous, or tumultuous manner, and he reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another than in the dwelling, or

(b) He reasonably believes that such force is necessary to prevent the commission of a felony in the dwelling."

## A.

Regarding the question of whether the State proved that defendant acted with malice in killing Gregory Braswell, defendant argues that the evidence adduced in the trial court, and the sequence of events established thereby, clearly indicate that from the time the deceased began the altercation until the time of his death, there was not the slightest pause in the activities of the two men engaged, and not the slightest opportunity afforded the defendant to deliberate or reason to the consequences of his actions. The State urges, on the other hand, that the record in this case reflects sufficient proof of malice.

■■ In *People v. Carter* (1951), 410 Ill. 462, 466, 102 N.E.2d 312, our supreme court discussed the questions of malice and specific intent, and we quote:

> "The necessary element of malice may be either express or implied, as where the fact has been attended with such circumstances as to evince a plain indication of a reckless heart and mind. [Citations.] There is a presumption that a sane person intends all of the natural and probable consequences flowing from his own deliberate act. [Citation.] Thus, if the direct and natural tendency of one's act is the destruction of the life of another, the natural conclusion is that the destruction of the other's life was intended."

■■ Furthermore, it is well settled that the intent to take human life may be inferred from the character of the assault (*People v. Coolidge* (1963), 26 Ill.2d 533, 536-37, 187 N.E.2d 694; *People v. Spagnola* (1st Dist. 1970), 123 Ill.App.2d 171, 187, 260 N.E.2d 20, *cert. denied,* 402 U.S. 911), and that such an inference is strengthened by the use of a deadly weapon or other circumstances. (*People v. Koshiol* (1970), 45 Ill.2d 573, 578, 262 N.E.2d 446, *cert. denied,* 401 U.S. 978.) Moreover, malice may be implied when all the circumstances of a killing show an abandoned and malignant heart. *People v. Jones* (1962), 26 Ill.2d 381, 385, 186 N.E.2d 246.

■■ Applying these principles to the case at bar, we find that the record amply supports the State's argument that malice was proven in the court below when all of the circumstances surrounding the victim's killing are taken into account. We find certain aspects of the circumstances extremely persuasive in this regard: defendant was no doubt irritated by the complaints being made by Gregory Braswell concerning the condition of the premises being rented; Mrs. Braswell testified that defendant threatened to kill her husband, and, although defendant denied this allegation, the trial court was in a position superior to this court respecting the credibility of the witnesses; defendant far out-

weighed the victim, who was intoxicated at the time of the altercation; and the nature, number and extent of the wounds inflicted upon the victim by defendant, and the character of the assault as testified to by defendant lead to the inference that defendant acted with the malice requisite to support a charge of murder. We find, therefore, that the State sufficiently proved the essential element of malice in the court below.

## B.

Defendant next contends that the State failed to prove that the homicide was not justified in defense of habitation, pursuant to section 7—2 of Illinois' Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 7—2). Defendant urges that the undisputed testimony in this case discloses that the homicide was committed by defendant in his home against one who unlawfully entered it and physically assaulted defendant.

In addition, defendant claims that the homicide was justified, in that it was committed in self-defense; defendant relies upon the pronouncements of section 7—1 of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 7—1.) Defendant argues that he was clearly allowed to use deadly force in his own defense after having been assaulted in a manner which would have made him reasonably apprehensive of death or great bodily harm.

In support of his position on the defense of habitation argument, defendant relies upon *People v. Givens* (1962), 26 Ill.2d 371, 186 N.E.2d 225. In *Givens*, the deceased, without provocation, followed the defendant to his room in a boardinghouse. Defendant did not know the deceased, and had never talked to him prior to that time. The deceased stood in the doorway of the defendant's room to prevent the latter from entering. The defendant told the deceased, whom he feared, to get out, and, when the latter refused to do so and kept coming forward, the defendant fired one shot which killed the defendant. The defendant in *Givens* weighed approximately 130 pounds, was 59 years of age, and was nearly blind; the deceased in *Givens* weighed about 170 pounds, was 35 years of age, and was described as "well-developed."

Our supreme court held in *Givens* that, upon the evidence, the defendant's conviction must be reversed. During the course of its opinion, the court points out that, in his own habitation, a man may use all the force necessary to repel an invasion of his home; and that "* * * one may resist with force an unlawful entry by one whose purpose is to assault or do violence to him, to the extent of taking the aggressor's life, even though the circumstances may not be such as to justify a belief that there was actual peril of life or great bodily harm." *Givens*, at 375.

In contrast to the factual circumstances of *Givens*, the defendant in the matter at hand outweighed the deceased by some 80 pounds; there was hardly any discrepancy in age between the two; the deceased was intoxicated; the two men were not strangers; and the defendant here proceeded to stab the weaponless victim not once, but nine times. We find *Givens* inapposite.

## C.

■■ With respect to the issue of whether the homicide committed by defendant was justified as having been committed in self-defense, it is clear that the question of whether a killing is justified under the law of self-defense is always a question of fact. *People v. Washington* (2nd Dist. 1964), 54 Ill.App.2d 467, 470, 204 N.E.2d 25.

Our supreme court recently addressed itself to the principles surrounding the theory of self-defense in *People v. Benedik* (1974), 56 Ill.2d 306, 307 N.E.2d 382, wherein the defendant pled self-defense on the basis that the deceased had attacked him with a knife and that during the struggle, he had stabbed the deceased three times in the abdomen. The supreme court, in refusing to disturb the finding of the trier of fact, stated that it was "* * * within the province of the jury to judge the credibility of witnesses, weigh the testimony and determine matters of fact." (*Benedik*, at 310.) In the same opinion, at page 309, the court stated:

> "The fact that the defendant claims to have acted in self-defense and testified as to his version of the occurrence, however, is not sufficient to elevate his claim to the level of reasonable doubt when his testimony is viewed in the light of all of the other facts and circumstances of the case."

■ We feel that the just-quoted passage from *Benedik* is applicable to the matter under consideration, and we find that the court below, the trier of fact in this matter, was not under the compulsion to elevate defendant's claim of self-defense to the level of a reasonable doubt, when defendant's testimony is viewed in light of all of the other evidence and circumstances surrounding the killing, as adduced at trial. It is further clear to us that the trial court, as the trier of fact, was not required to search out a series of potential explanations compatible with innocence and elevate them to the stature of a reasonable doubt. *People v. Puckett* (1st Dist. 1972), 6 Ill.App.3d 206, 209, 285 N.E.2d 258.

## II.

Defendant next contends that the trial court, by virtue of a statement the court made when entering judgment upon defendant's conviction,

indicated that he had improperly shifted the burden of proof from the State to the defendant. Upon entering judgment on defendant's conviction, the court stated:

> "The Court finds your story of this incident unbelievable. And for your information before you testified the best the Court could see that the State had proved was voluntary manslaughter. You convicted yourself in [*sic*] murder out of your own mouth.
>
> Your version of the testimony [*sic*] is unbelievable and unworthy of belief and the Court did not believe it."

The State's response to defendant's argument on this point is threefold: (1) that the trial judge's comment was a finding of fact, which went to the persuasiveness, rather than the sufficiency of the evidence; (2) that the defendant was not bound to prove justification simply because the State had proven the murder was unjustified and malicious; and (3) that even if the defendant's testimony aided the State in the proof of its case, the testimony was offered after a motion for a directed verdict had been denied, and, therefore, the trial judge was permitted to consider all of the evidence presented.

The record indicates that at a lengthy argument on defendant's posttrial motion for a new trial, the defendant was represented by counsel who has represented the defendant on appeal. Substantially the same theories were presented to the trial court as have been presented, on behalf of the defendant, to this court. At the conclusion of that hearing, the able, experienced trial court stated:

> "THE COURT: It just so happens that I have reviewed this matter for that very purpose of making an attempt to be judicious, to determine whether I made a mistake in my judgment.
>
> My review of the matters and my notes, and the defendant's testimony, and you see it was the defendant's testimony as to the manner by which Mr. Brasswell [*sic*] came to have those seven stab wounds in mortal portions of his body which the Court found incredible and unable to believe.
>
> Maybe it did happen the way you, Mr. Montgomery, who didn't try this case, said it might have happened, and maybe the defendant in the struggle after he had disarmed the deceased was afraid and continued in the fray until he had stabbed him seven times, but that is not what his testimony was.
>
> His testimony was that after I had disarmed Brasswell [*sic*] and backed to his sink he allowed and permitted and stood there and allowed the deceased to seven times run into him with the knife entering the deceased's body.
>
> I find that incredible. I find that it didn't happen. I don't

believe the defendant, and that was the basis upon which I found him guilty of murder, and that is the basis upon which I deny your motion for a new trial."

Our supreme court has held in *People v. Jordan* (1954), 4 Ill. 2d 155, 156, 122 N.E.2d 209, that it is our duty in criminal cases, where a verdict of guilty is returned by a jury or where a similar finding is made by a court where a jury has been waived, not only to carefully consider the evidence but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged. In addition, this court has held that the State, in a murder prosecution, has the burden of proving every element of the offense charged, including the absence of justifiable use of force in self-defense where the issue is raised. (*People v. Jones* (1st Dist. 1971), 133 Ill.App. 2d 363, 367-68, 273 N.E.2d 423.) The issue of self-defense is a question of fact, and a decision on that issue by the trier of fact will not be disturbed unless the evidence is so unreasonable, improbable or unsatisfactory as to suggest a reasonable doubt. *People v. Halley* (5th Dist. 1973), 13 Ill.App.3d 719, 722, 723, 300 N.E.2d 645.

As in *Jordan*, here we have only the defendant's version of what occurred in defendant's home. The supreme court in *Jordan*, at page 163, then set forth the principles we believe applicable to this case:

"Here we have only one version of what occurred when the two men met. It is the version of defendant, and if it is not improbable, nor uncorroborated, nor contradicted in its material parts, then the jury may not disregard or reject it, and if the jury as in this case, does reject it, then such action must be regarded as the result of passion or prejudice of the jury. The rejection of defendant's testimony by the jury still does not have the effect of supplying proof of defendant's guilt beyond a reasonable doubt sufficient to sustain the conviction of defendant.

The foregoing rule is not without some limitations. The jury may reject defendant's story if, in itself, it is so remarkable as to almost seem incredible if there were no contradictory evidence, (*People v. Morris*, 254 Ill. 559, 573,) or if the story of defendant was so improbable as to justify it in being disregarded by them, or if it was contradicted by the facts and circumstances shown in the record, (*People v. Strause*, 290 Ill. 259, 278,) or if defendant's story was so unreasonable as to be judged improbable. (*People v. Meyers*, 412 Ill. 136, 145; *People v. Uher*, 375 Ill. 499, 502.)"

We do not believe that the trial court's gratuitous remark indicates

that the trial judge was of the belief that the defendant had the burden of proving self-defense; the remark was uttered after a finding of guilty was entered, based upon all of the evidence. (See *People v. Peery* (1st Dist. 1967), 81 Ill.App.2d 372, 376, 225 N.E.2d 730.) Moreover, defendant himself chose to take the witness stand, and when a defendant elects to justify his conduct, he must be judged by the improbability of his own evidence. *People v. Mastin* (1st Dist. 1969), 110 Ill.App.2d 400, 403, 249 N.E.2d 658.

■■ Our review of the record presented here indicates the trial court was correct in rejecting defendant's testimony as incredible—in fact we also find it improbable—and as the trial court said, "I find that it didn't happen." We believe there are facts and circumstances, as shown in the record and previously set forth in this opinion, which contradict the defendant's story.

We find, therefore, that the trial court did not improperly shift the burden of proof to the defendant.

### III.

■■ Finally, defendant argues that certain improper inferences were drawn from the evidence by the State in closing argument. We have read the record thoroughly, and we find that objections were not made to any of the alleged improper inferences defendant now seeks to raise for the first time on this appeal. The failure of defendant to preserve these points by objection forecloses our consideration of them on appeal. *People v. Pelegri* (1968), 39 Ill.2d 568, 574, 237 N.E.2d 453; *People v. Collins* (1st Dist. 1971), 132 Ill.App.2d 553, 556, 270 N.E.2d 226.

For these reasons, then, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.

### SUPPLEMENTAL OPINION UPON REHEARING

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

The defendant filed a petition for rehearing[1] which urged "* * * that this Court erred in failing to consider whether as a matter of law the facts of this case at most established voluntary manslaughter rather than murder." As this contention had not been urged by the defendant in his original brief to this court or in the oral argument, we granted the

---

[1] See Supreme Court Rule 367 (Ill. Rev. Stat. 1973, ch. 110A, par. 367).

petition for rehearing. Thereafter the State filed an answer to said petition.

Defendant points out "* * * that a killing becomes voluntary manslaughter in two situations—first where the killing is the result of a sudden and intense passion caused by serious provocation or second where the killing was done under the mistaken belief that it was justified such as in self defense or defense of dwelling."

Section 9—2 of our Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—2) provided:

"§ 9—2. Voluntary Manslaughter.

(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

In support of this theory, defendant relies upon *People v. Pierce* (1972), 52 Ill.2d 7, 284 N.E.2d 279. Pierce was convicted of voluntary manslaughter as the result of a quarrel between Pierce and Jones concerning a prior battery and rape. The evidence before the jury clearly established that Pierce and the deceased, along with a codefendant Coffey, left a party, and that an argument then developed between Pierce and the deceased which resulted in a fight. The supreme court, in affirming the conviction of Pierce, noted "* * * there was ample evidence * * * that defendant's actions resulted from an intense passion precipitated by the quarrel and Jones' attempt to strike the defendant." (52 Ill.2d 7, 11.) We believe the facts in *Pierce* are sufficiently different from the evidence in this case.

■■ We have again reviewed the record here and do not find the serious provocation as required in section 9—2(a) or justification as required in section 9—2(b) to reduce the crime here from murder to voluntary manslaughter.

As to the other points raised by defendant in the petition for rehear-

ing, we find defendant is only re-arguing that which had been considered and decided in our original opinion.

We adhere to our original opinion and affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.