THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES MASSEY, Defendant-Appellant.

First District (2nd Division)   No. 76-235

Opinion filed May 10, 1977.

James Geis and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, James Massey, was charged by indictment with the offense of murder in connection with the death of two-year-old Janeen Butler. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) Upon a bench trial defendant was found to be guilty as charged. Judgment was entered upon the finding and defendant was sentenced to serve a term of confinement in the Illinois State Penitentiary of 14 years to 14 years and 1 day. From entry of the judgment of conviction defendant appeals and contends that the evidence adduced at trial was insufficient to establish his guilt beyond a reasonable doubt.

A review of such evidence indicates that the deceased expired as the result of shock induced by the infliction of multiple external injuries imposed over a period of 24-48 hours preceding her death on December 28, 1972.

The child's mother, Janice Butler, testified that on December 27, 1972, she lived at 7242 South Constance Avenue in Chicago, Illinois, with her two-year-old daughter, Janeen, and defendant, James Massey. Butler and defendant had cohabited for a period of approximately eight months preceding the child's death, the final three months of which were spent at the aforementioned address. During this time, Butler was employed as a clerical worker and her absence from the home on a daily basis necessitated that the child be placed in the custody of her grandmother,

Clementine Butler. The child was returned to her mother's care each weekend.

For reasons unapparent from the record, this pattern was disrupted on December 27-28, 1972, and the child was left in the sole care and custody of defendant. Janice Butler testified that when she departed for her place of employment on the morning of December 27, 1972, her child was in perfect physical health.

Upon her return from work on December 27, 1972, at approximately 5:45-6 p.m., she observed that the child had a mark on the side of her face. Butler questioned defendant as to its origin. He responded that he had visited a museum with the child during the course of the day where some candy had become lodged in her throat. Defendant indicated that he had struck the child's face and pressed her stomach in an effort to dislodge the foreign object and that he had been assisted in his efforts by several other unidentified persons. Following this discussion, Butler changed her daughter's clothing inasmuch as the child had been vomiting, fed her and put her to bed.

The following day, December 28, 1972, Butler departed for work and again entrusted her child to the custody of defendant, instructing him to telephone her place of employment should the child's condition fail to improve. Shortly after her arrival at work, Butler telephoned defendant who indicated that the child's health had, indeed, improved and was no longer vomiting. She telephoned again that afternoon but obtained no answer.

Butler returned home that evening between 5:30 and 6 and observed defendant and the child in the living room. Their coats, which had been removed, bore vomit stains. Butler observed that her daughter had bruises on her forehead which had not been present that morning. Butler told defendant that she would take her daughter to the hospital for treatment. Defendant replied that he had transported the child to the hospital earlier in the day where an examining physician had prescribed warm milk and a suppository. Butler insisted upon obtaining further treatment and defendant, aided by police escort, drove Butler and the child to Jackson Park Hospital.

They arrived at the hospital's emergency room and sought immediate attention. After a period of approximately 20 minutes without assistance, Butler and defendant drove to Cook County Hospital where they registered and Butler began to undress the child preparatory to a physical examination. In so doing, she noticed that a trickle of blood emanated from her daughter's nose and immediately carried the child to a physician and oxygen was administered. Before she left the hospital on the evening of December 28, 1972, Butler was informed that her daughter had died.

Butler also testified that during the course of that evening she observed

defendant in the hospital emergency room while she sought treatment for the child. However, assisted by police officers, she subsequently attempted to locate him and his vehicle, without success. Butler indicated that during the time in which she and defendant had lived together she had not observed defendant strike the child and that prior to December 27, 1972, she had not left the child in defendant's care for an entire day.

Several months thereafter, Butler had occasion to speak to defendant concerning the child's death. On this occasion defendant told Butler that the bruises found on the child's head on December 28, 1972, had been sustained by the child having fallen down an unspecified number of stairs. Defendant had not informed Butler of such an accident prior to the date of this conversation. Defendant also reiterated his explanation of the events of December 27, 1972. However, defendant admitted to Butler that he lied in telling her that he had obtained medical treatment for the child at the hospital on December 28, 1972.

The State also adduced the testimony of the child's grandmother, Clementine Butler, who indicated that to her knowledge the child had not been physically abused by either Janice Butler or defendant.

Chicago Police Officer Robert Lewis testified that pursuant to his investigation of the death of Janeen Butler he had occasion to speak to defendant in the early afternoon hours of January 3, 1973. After advising defendant of his constitutional rights, Officer Lewis questioned defendant regarding the source of the child's injuries. Defendant reportedly told the officer that on December 27, 1972, he had taken the child to visit the Museum of Science and Industry in Chicago, Illinois. Defendant apparently had been participating in a methadone treatment program on that date but had missed his scheduled appointment for that morning and had decided to pass the time until an afternoon appointment in guiding the child through the museum. According to Officer Lewis, defendant informed him that between 11 a.m. and noon on that date some candy had become lodged in the child's throat and that with the assistance of a uniformed employee of the museum working in the vicinity of a "cancer display," defendant had struck the child about the neck and abdomen in an effort to dislodge the candy.

Officer Lewis commented that the child's injuries had been somewhat severe and asked defendant to explain the great number of bruises on the body. Defendant was unable to explain the bruises but, according to Lewis, defendant indicated that he might have struck the child with excessive force because he was "high" at the time. Lewis reminded defendant that defendant had earlier indicated that he had missed his scheduled methadone appointment on the morning of December 27, 1972. Defendant told the officer that he had taken some methadone in his apartment earlier in the day. Lewis asked defendant if, in light of the

child's injuries, he had taken her to the hospital. Defendant informed the officer that he had taken the child to, but failed to enter, Jackson Park Hospital. Defendant denied that he had sexually molested the child.

The State introduced the testimony of George Jakobowski and Joseph Sulier. Each had been employed as a uniformed tour guide on December 27, 1972, and had been assigned to the "medical exhibits" at the Museum of Science and Industry in Chicago, Illinois. Each had been on duty patrolling the medical exhibits from 11 a.m. to 12 noon on that date, however, neither witness struck a child on its back to dislodge a foreign object, or administered first aid, and neither observed anyone else render such assistance.

The State also adduced the expert medical testimony of two licensed and practicing physicians, Dr. Fu-Chin Chen who examined Janeen Butler in the emergency room of Cook County Hospital on December 28, 1972, and Dr. Opas Ratanaproeksa, who performed an autopsy upon the child's body on December 29, 1972.

Dr. Chen testified that on December 28, 1972, at approximately 7:40 p.m., Janice Butler brought her child, Janeen, into the emergency room of Cook County Hospital where the doctor was on duty and informed him that the child had swallowed a sucker on December 27, 1972. Dr. Chen examined the child and discerned no heartbeat, pulse, pupil reflex or other vital signs. The child's body had grown "cold" and Dr. Chen pronounced her dead on arrival.

During the course of his examination, Dr. Chen had occasion to observe that bruise marks covered the child's face, head, body and extremities. The child was also noted to have suffered a spicule rupture of the rectum which, in Dr. Chen's opinion, was a rare physical finding in a child. Dr. Chen testified that as a result of his examination, he was able to conclude that Janeen Butler possibly died as a result of child abuse.

Dr. Ratanaproeksa, an expert in forensic pathology, testified with regard to his post-mortem examination of the child's body. During the course of his external examination, Dr. Ratanaproeksa noted that the child's face, abdomen, lower chest, hands, arms, thighs, back and buttocks were bruised. Bruises covered the entire forehead, cheek, nose, mouth and the area in front of the ear. These bruises were of varying severity and ranged from 1 to 10 centimeters in diameter.

Upon an internal examination of the corpse, Dr. Ratanaproeksa observed internal bleeding in the subcutaneous tissue and muscle of the interior abdominal wall and estimated that these injuries had been inflicted within 24-48 hours of the child's death. Focal and passive bleeding was observed in the intestine, diaphragm and the posterior section of the abdominal tissue. Quantities of blood were also observed in

the stomach attributable to having been swallowed. The child's lungs contained blood and had apparently been bruised by a blunt object. The child's skeletal structures were not fractured.

In examining the mouth and neck structures of the child, Dr. Ratanaproeksa apparently noted no discernable injury to the child's air passage. Bleeding was observed under the envelope of the brain within the child's skull which, according to Dr. Ratanaproeksa, was indicative of injuries sustained to the front of the head.

In examining the child's bowel and urinal tract, Dr. Ratanaproeksa discovered internal bleeding from the entrance of the anus to 5 centimeters into the anal ring. It was indicated that this type of injury is consistent only with an internal injury inflicted by a rigid, oblong object bearing a soft surface so as to permit its insertion into the anal canal without breakage of the skin tissue surrounding the anal ring. It appears that such an injury might be inflicted by the insertion of a penis or a finger.

Toxicological reports of analyses performed upon the child's body tissue and fluids indicated that an unusually high concentration of lead was present in the child's brain. Although such concentrations of lead might prove fatal under certain circumstances, in Dr. Ratanaproeksa's opinion, this condition did not contribute to Janeen Butler's death.

Based upon his examination of her body, his prior experience and to a reasonable degree of medical and scientific certainty, Dr. Ratanaproeksa concluded that Janeen Butler died as the result of shock induced by the infliction of multiple injuries. Specifically, it was noted that either the injuries to the child's head or her abdomen could have been fatal. Dr. Ratanaproeksa also indicated that a child having sustained this type of injuries "would take a little time to die" and estimated in this regard "a matter of minutes, a half-hour or something like that." He further indicated that these mortal injuries were "unlikely" to have been sustained as the result of a fall down a flight of stairs or an automobile accident but, rather, were the result of the application of blunt, external force applied to the child's body and, in particular, a beating.

■■ Defendant initially argues that such evidence does not establish, beyond a reasonable doubt, the fact of defendant's criminal agency in the death of Janeen Butler. While such criminal agency, and the death of the child, is part of the *corpus delicti* which the State must establish beyond a reasonable doubt, it must also be established that defendant committed the crime. (*People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) Direct testimony is not required to establish the means and manner of the victim's death. These propositions may be inferred from the facts and circumstances properly proven. (*People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208.) That the guilt of an individual defendant must be

established so as to exclude every reasonable hypothesis of innocence does not mandate that the trier of fact search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt. *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.

■■ An application of these principles to the facts of the case at bar leaves no doubt that two-year-old Janeen Butler's death was the result of a criminal agency. To be sure, no eyewitness testimony was adduced to establish this fact. It may be recognized that this type of assault is, by its very nature, secretive and usually incapable of direct proof. However, the clear, consistent and credible testimony of the forensic pathologist, Dr. Opas Ratanaproeksa, based as it was upon his considerable personal experience and his exhaustive post-mortem examination of the child's body, simply cannot be ignored. His conclusion that the child's death was caused by the external application of blunt force is well supported by the record. In his considered opinion, this externally applied blunt force was consistent with and, indeed, was caused by blows inflicted during the course of a beating. The various and massive bruises evidenced by the photographic exhibits adduced at trial and appended to the record before this court make it utterly clear that Janeen Butler's death was the result of criminal activity of this nature.

There was also sufficient evidence adduced at trial to establish that defendant was responsible for this criminal activity. The uncontradicted and credible testimony of Janice Butler established that the child had been entrusted into defendant's exclusive custody and care during the daytime hours of December 27-28, 1972; that prior to those dates the child appeared to be in excellent physical condition; and that upon Butler's return to her home on December 27, 1972, she had occasion to observe that the child's face was marked. Defendant admitted to Butler that he had struck the child about the neck and abdomen, ostensibly in an effort to dislodge a foreign object from her throat, and that he had been assisted in this endeavor by a uniformed employee of the Museum of Science and Industry. The testimony of two such employees, while insufficient to conclusively rebut such an account, serves to discredit this explanation. According to Officer Lewis, defendant subsequently admitted that he was uncertain as to the severity of the blows inflicted on this occasion since he allegedly had been under the influence of methadone and was "high." The uncontradicted testimony of Janice Butler indicated that the child slept uneventfully that evening.

■■ On December 28, 1972, the child was again placed in defendant's exclusive custody. Upon Butler's return at approximately 5:30-6 p.m. the child was discovered to bear recently inflicted bruise marks. Defendant told Butler that he had obtained medical treatment for the child earlier

that day. Defendant subsequently retracted this story, admitted that he had lied in this regard, and suggested that the child's injuries were inflicted during a fall.

The bruises apparent on the evening of December 28, 1972, prompted Butler to seek immediate medical attention. However, it was not until 7:40 p.m. that the child was registered at the emergency room of Cook County Hospital, where attempts to revive her proved unsuccessful and the child was examined by a physician who pronounced her dead on arrival. Defendant, thereafter, unaccountably fled from the scene.

Such uncontradicted, unimpeached and credible evidence as was adduced by the State establishes that defendant was in sole custody of the child during the periods of time in which the child had been severely beaten; that defendant admitted striking her; that after the child's death defendant inexplicably fled the scene; and that defendant has, at various times, presented inconsistent explanations of the source of the child's injuries, his role therein, and his efforts to secure medical treatment for the abused child. Such evidence was sufficient to establish defendant's participation in the murder of Janeen Butler beyond all reasonable doubt. See *People v. Jarvis* (1974), 24 Ill. App. 3d 905, 321 N.E.2d 738 (abstract); *People v. Kinzell* (1969), 106 Ill. App. 2d 349, 245 N.E.2d 319.

Defendant maintains that the State's failure to establish the precise time of the child's death suggests that the mortal blows were inflicted when the child was not in defendant's sole custody. In support of this contention, defendant points out that Janice Butler observed a trickle of blood emanate from the child's nose as Butler undressed her preparatory to examination by a physician; that such blood loss was a sign of life; that the child was only thereafter pronounced dead at 7:40 p.m.; and that, since Dr. Ratanaproeksa commented that a child having sustained this type of injuries would have "taken a little time to die" (*i.e.*, approximately one-half hour), the child had been in the joint custody of defendant and Janice Butler at the time such blows were inflicted.

■■ Dr. Ratanaproeksa, however, indicated that the injuries he observed upon the body of Janeen Butler were "acute" and imposed within a period of 24-48 hours of her death. Moreover, in view of the uncontradicted testimony of Janice Butler that she observed recent bruises upon her child in the early evening hours of December 28, 1972, and immediately thereafter sought medical assistance until such time that the child was officially pronounced dead, there is no basis to infer that she was present when such blows were inflicted and, hence, the failure of the State to establish with precision the actual time that the mortal blows were inflicted and the precise time of death is insufficient to cast doubt upon the fact that said injuries were the results of defendant's handiwork.

██ Nor can it be doubted that in inflicting these injuries defendant intended to kill or do great bodily harm to the person of Janeen Butler.

In *People v. Carter* (1951), 410 Ill. 462, 466, 102 N.E.2d 312, 314, the Illinois Supreme Court discussed the question of malice and specific intent and noted:

> "The necessary element of malice may be either express or implied, as where the fact has been attended with such circumstances as to evince a plain indication of a reckless heart and mind. [Citations.] There is a presumption that a sane person intends all of the natural and probable consequences flowing from his own deliberate act. [Citation.]"

Furthermore, the intent to take human life may be inferred from the character of the assault. (*People v. Muldrow* (1975), 30 Ill. App. 3d 209, 332 N.E.2d 664.) Malice may be implied when all the circumstances surrounding a homicide show an abandoned and malignant heart on the part of the assailant. *People v. Jones* (1962), 26 Ill. 2d 381, 186 N.E.2d 246.

Examination of the record in the case at bar indicates that a defenseless child died as the result of a sustained beating deliberately administered at the hands of defendant. The sadistic and brutal savagery of defendant's conduct evidences an abandoned and malignant heart intending to kill or do great bodily harm to Janeen Butler.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.